### Ex Parte J. R. West.

#### No. 32.　Decided June 22, 1910.

#### Rehearing Denied, December 8, 1910.

**1.—Constructive Contempt—Knowledge of Relator—Newspaper.**

Where relator was charged with criminal constructive contempt he could not be held responsible for a publication made out of his newspaper office, in his absence without his knowledge.

**2.—Same—Falsity of Defamatory Matter—Judgment—Truth of Publication.**

Where relator by his own admissions published and circulated defamatory matter against a trial judge concerning a case pending in the latter's court, it was not necessary that the judge in his findings in contempt proceedings against relator specifically adjudged the defamatory matter to be false, where the relator declined to prove the truth thereof.

**3.—Same—Judgment—Jurisdiction—Pleading—Proof—Penalty.**

Where it appeared that relator had been fined for constructive contempt on written motion in the District Court, which alleged that he had published and circulated defamatory matter concerning the district judge thereof with reference to a certain civil suit as well as a certain criminal case pending in said court, and it developed in the trial of the contempt proceedings that the said judge had lost jurisdiction of said civil suit by change of venue, the judgment finding relator guilty of contempt was not void because it was based on pleadings and proof embracing both of these cases, and did not designate the punishment as to each but fixed one penalty for both; as both the subject matter and the person were within the jurisdiction of the trial court.

**4.—Same—Truth of Statement—Burden of Proof—Presumption.**

Where relator had published certain defamatory matter against the district judge, wherein by implication he charged him with malfeasance in office with reference to a case pending in his court, and whereupon he was prosecuted before said judge for criminal contempt on written motion, the burden of proof was upon relator to show that such publication was true, and where he declined to do so the judge was authorized to find the falsity thereof as a fact and to adjudge him guilty of contempt; and such finding is inferred from the nonproduction of proof of the truth of the publication.

**5.—Same—Judgment—Words of Contempt—Moving Papers.**

Where in contempt proceedings, the moving papers, charging relator with criminal contempt by publishing defamatory matter about a district judge concerning his official conduct as such in a case pending in his court, set out the words held to be contemptuous, it was not necessary in the judgment fining relator for contempt to set out the contemptuous matter alleged in said moving papers.

**6.—Same—Rule Stated—Pleadings—Practice—Judgment.**

While the facts of contempt must appear in the judgment entry when the parties are brought to trial without preliminary written motion, yet they need not be set out in the judgment where the information is in writing and sets out the matter of contempt, and the latter may be looked to in aid of the findings in the judgment.

**7.—Same—Commitment—Facts in Evidence—Moving Papers.**

It is not required, where the relator was fined for contempt, that the commitment set out a statement of the evidence upon which he was found guilty of criminal contempt, the judgment and the moving paper must be looked to for this.

**8.—Same—Case Pending—Publication—Defamatory Matter—Judgment.**

Where the judgment of contempt. did not recite the evidentiary facts upon which the contempt was based but the judge found that the publications set forth in the motion arraigning relator before said judge in contempt proceedings were made; that they related to a pending criminal case in said judge's court; that they were scandalous and were designed and calculated to influence the result of such case, it was not necessary that the judgment finding relator guilty of contempt should set out verbatim these publications.

**9.—Same—Practice in Contempt Cases—What Evidence to be Considered—Intent.**

Where relator was brought before a district judge upon written motion filed, alleging that he had published and circulated defamatory matter concerning two cases pending in the District Court over which said judge presided and it developed that only one case was pending in said judge's court over which he could take jurisdiction in contempt proceedings, he could nevertheless consider all the publications made by relator with reference to both cases and find the defendant guilty of contempt, where such publication was libelous with reference to the case pending, and all the publications bore upon the intent of relator.

From Newton County.

Original habeas corpus proceeding asking release from a judgment of contempt entered against relator for publishing defamatory matter concerning the official conduct of a district judge about a case pending in his court, and inflicting a fine of $100 and three days confinement in the county jail.

The opinion states the case.

*Crook, Lord & Lawhon,* for relator.—The judgment must contain a recitation of the facts constituting the matter of contempt: Ex parte Robertson, 27 Texas Crim. App., 628, 11 S. W. Rep., 669; Ex parte Duncan, 42 Texas Crim. Rep., 661, 62 S. W. Rep., 763; Ex parte Kearby, 35 Texas Crim. Rep., 531.

The *commitment* by which relator is held must contain the evidence upon which the alleged contempt is based: Same authorities as above.

On question of the want of jurisdiction of the district judge in fining relator for contempt: Ex parte Green, 46 Texas Crim. Rep., 576, 81 S. W. Rep., 723; Ex parte Robertson, supra.

*John A. Mobley,* Assistant Attorney-General, for the State.

COBB, SPECIAL JUDGE.—Petitioner having been adjudged guilty of contempt in a proceeding before the Hon. W. B. Powell, Judge of the First Judicial District, and restrained of his liberty by virtue of orders of commitment issued by him, has filed here his application to be discharged upon the grounds that the district judge had no jurisdiction, being disqualified to act in the matter, out of which the contempt proceedings arose, and that the facts found in and by the judgment do not in law constitute or amount to contempt, with the further reason that the information filed against him charges two separate matters of contempt, and the judgment sustaining both did not designate the punishment assessed as to each, but fixed one penalty for both.

Petitioner is an attorney at law, as well as editor, proprietor and publisher of a newspaper in the town of Newton, and county of Newton, and State of Texas, and having published in his journal of and concerning one John M. Horger, who, at the time, was clerk of the District Court for said county, and was standing for re-election, certain matters which Horger claimed and alleged were defamatory of his good name and fame, and for which the said Horger had sued relator in an action for damages, and had obtained from Judge Powell an order restraining relator from making any further publications against him, the said Horger. There was also pending in said court a case against relator charging him with the offense of assault with intent to murder. After the restraining order had been allowed by Judge Powell, petitioner made and published in his paper certain charges herein set out which, in the proceeding had against him, it is alleged were made and published for the purpose of scandalizing the judge, embarrassing his action in the said suits, and influencing the result in the same. Informations setting up the alleged defamatory publications having been filed before Judge Powell in due form, and he having heard and considered the same, made the following findings and adjudications:

"Ex parte
    "J. R. West.

"Saturday, Sept. 16, 1908.
"Judgment.

"This day this cause being regularly called and it appearing to the court that the same is in the nature of an information for constructive contempt of this court, and the defendant having been duly summoned to appear and answer such information and show

cause, if any he had, why he should not be punished for contempt of this court, came in person and by attorneys and announced ready for trial, and having duly filed his reasons herein, the court considered the agreed evidence and facts as contained in the agreed statement of facts filed herein on September 12, 1908, and argument and being fully advised in the premises finds that the defendant, J. R. West, uttered, published and circulated the articles hereinafter set out in the Newton News, a local paper published in the town of Newton, owned and edited by the defendant, J. R. West, and circulated throughout Newton and adjoining counties, and that said publications were of and concerning a certain law suit during said time pending in the District Court of Newton County, Texas, wherein John M. Horger was plaintiff and said J. R. West defendant, which said cause was undetermined and stood on the docket of said court subject to trial at the present term of this court; and of and concerning another suit pending and undetermined in the District Court of Newton County wherein defendant J. R. West stood charged by indictment duly presented with assault with intent to murder and styled the State of Texas vs. J. R. West, No. ——. And that said publications were maliciously made for the purpose of scandalizing the court and bring it into bad repute, and influencing and prejudicing the court in the trial of said cause and with said purpose in view the said defendant did so print, publish and circulate in said Newton News in the issue of Friday, June 10, 1908, a certain article headed in large type, 'Two Old Blind Mares Come a Tearing Down The Wilderness. Emperor William & His Cousin, John King, would silence the Public Press and abrogate freedom of speech. Has the declaration been repealed.' And in said article the following language is used, to wit: 'Emperor William (Powell) only required a $500 bond.' And again, 'Horger lacking a just cause did not have the manhood or courage to meet me with the same weapon I employed against him. I guess he thought there was no use to have a cousin for Judge unless he used him, and Powell is certainly "Horger's Judge." ' And again, 'Of course it requires no Prophet to foretell how Powell will decide the issues, regardless of the law or the evidence;' and in same issue of said paper in large type was printed the following 'queries? the following inquiries are addressed to the injunction depart of the Horger-Powell Combination.' That in the issue of said paper of July 10, 1908, defendant wrote, published and circulated an article wherein the language appears: 'They have never yet been able to develop the semblance of guilt on my part in any of the indictments they have framed up against me, but they have continually kept an indictment hanging over me and caused me a great deal of vexation and humiliation.'

"That in the issue of Friday, July 3, 1908, the said defendant so published and circulated in said newspaper an article under the headlines of 'Put Up or Shut Up,' among other things, the following:

'If his attorneys did so advise him it speaks well for their insight and ability to discover the truth by independent investigation, and while they doubtless knew that it would be no trouble to have Emperor William to commit me for contempt, they likewise knew that this could not be done without giving me an opportunity to prove the truth of my assertion in the published matter which worried Horger so, and that there are other and higher courts (even higher than Emperor William's court) to which I could appeal for justice and that the truth would get before the public before the primary election on July 25. No doubt Horger realized that I could force a hearing of the charges against me before the primary election, or he never would have undertaken that injunction. He doubtless supposes that if I said anything further he did not want the public to know his cousin, the Emperor, would commit me to jail without a hearing, and I have no doubt that the said Emperor would like to do this if he dared, but while he is noted for his stupendous ignorance of the law in general, he has been around courthouses and among lawyers enough to know better than that.' And again, in the said article the following language is used, to wit: 'Of course it requires no prophet to foretell how Powell will decide the issue, regardless of the law or the evidence.' And again, in the same article, 'Of course, I do not hope to be acquitted by Judge Powell, no matter what the evidence shows, but we can get the evidence before the public, and when the ladies of the Woman's Home Mission Society are put under oath they are going to tell the truth about the matter.'

"That in the issue of said paper of Friday, July 24, 1908, the said defendant so published and circulated an article headed, 'Afraid of the Truth,' in which the following language is used: 'Issue after issue I have challenged Judge Powell and John M. Horger to arraign me and let me prove the truth on them. I again challenge Judge Powell; I dare him to arraign me, even more my countrymen, with outstretched arms I implore his imperial majesty to open his moot court to me, and in the presence of Almighty God and the good, honest citizenship of the First Judicial District, permit me to turn the spotlight on.' Again, in the same issue of said paper the following article was so published and circulated by the defendant, to wit: 'The editor of the Newton News will give Emperor William and King John Thirty Thousand Dollars to put him in jail for violating the injunction lately issued by the Emperor in favor of his cousin, King John, against the aforesaid editor. The said editor is still out of jail and is fretting at his freedom.'

"That continuously for several weeks the said defendant continued to publish articles and circulate the same in said newspaper of and concerning this court and said cause so pending therein in addition to those above recited which were intended to and calculated to reflect upon the integrity of the court and bring it into disrepute and preju-

dice, and influence the court and jurors in the trial of said cause and was so calculated to do, and that said publication was made for the purpose and with intent of scandalizing this court, and intended to unduly influence and overawe its deliberations in said pending cause, and were made at a time and under circumstances calculated to affect the force of justice in said proceeding, and were intended for that purpose.

"It is therefore the opinion of this court that the said defendant, J. R. West, is guilty of contempt of this court, as charged in the complaint and information filed herein, and it is the judgment of this court that said defendant, J. R. West, is so in contempt of this court and he is so adjudged, and his punishment is hereby assessed at imprisonment in the county jail for three days and a fine of One Hundred ($100) Dollars.

"And it is therefore considered, ordered and adjudged by the court that the State of Texas do have and recover of the defendant, J. R. West, the said fine of $100 and all costs of this proceeding, and execution may issue against the property of the said defendant for the amount of such fine and costs, and a capias will forthwith issue herein commanding the sheriff to arrest the defendant and place him in jail in this Newton County and there safely keep him in prison for the full period of three days from the date hereof and until said fine and costs are fully paid.   O. K.—W. B. Powell.

"That on this day counsel for the State withdrew all objections to the introduction of evidence by defendant and offered to permit defendant to introduce any evidence he desires, and defendant refuses to offer any other evidence.   And the statement of facts filed herein is here now so qualified.

"W. B. Powell, Judge."

The attorneys in the matter filed an agreed statement of facts as follows:

"No. 1052.                    Suit pending in the District Court of
"Ex parte                    Newton County, Texas.
    "J. R. West.

"In the above styled cause, being one in the nature of an information against the defendant, J. R. West, for contempt of court, the attorneys representing the State and defendant hereby agree that the following are the facts and all of the facts relating to said cause admissible under the ruling of the court, and upon same the cause may be tried and judgment rendered, to wit:

"1.   That about June 11, 1908, John M. Horger, through his attorneys, presented to Hon. W. B. Powell, Judge of the First Judicial District, his petition for an injunction restraining the defendant, J. R. West, defendant herein, from publishing in the Newton News,

a newspaper published by the defendant, or otherwise any matter reflecting upon the character of the plaintiff or tending to injure his good name falsely.

"That said application was contained in a petition wherein the said John M. Horger was plaintiff and J. R. West defendant, wherein the plaintiff sued the defendant for damages in the sum of $30,000 for libel.

"That on said petition the said district judge on said day endorsed his fiat appointing John A. Hancock, clerk pro tem of the District Court of Newton County, Texas, to act as clerk in this cause, without bond and requiring him to take the oath of office and directed him as such clerk to issue the writ of injunction prayed for upon the plaintiff, giving bond in the sum of $500.

"That the plaintiff in said cause was at the time the duly qualified and acting clerk of the District Court of Newton County, Texas, and the said John A. Hancock, after taking the oath of office, and on June 11, 1908, as such clerk pro tem filed said petition in the District Court of Newton County, Texas, and after the execution by plaintiff of the injunction bond, as required by the fiat of the judge, issued the writ of injunction and the citation to the defendant in said cause, which on said day were duly served on the defendant, and said cause was so pending and undetermined in the District Court of Newton County, Texas, during all of the time of the publication of the articles hereinafter referred to and is still so pending.

"1a.    That at the time of said publications there was also pending in the District Court of Newton County a cause No. ——, styled State of Texas vs. J. R. West, wherein said defendant charged by indictment duly presented with assault with intent to murder, which cause stood on the docket for trial and which cause was tried and submitted to the jury September 1, 1908, and verdict rendered September 3, 1908, and the order appointing attorneys to prepare contempt proceedings in this cause was made by the court September 1, 1908.

"2.    That the defendant, J. R. West, is the owner, editor and publisher of the Newton News, a weekly newspaper, published at the town of Newton, in Newton County, Texas, and circulated throughout Newton and adjoining counties, and was such publisher, owner and editor at the time of the publication of all of the articles hereinafter referred to, and as such owner, editor and publisher wrote and published said articles.

"3.    That in the issue of said paper dated July 10, 1908, said defendant wrote, published and circulated the article entitled the Emperor or the King, which is copied verbatim and made part of this statement of facts and is attached hereto and marked exhibit A, and that in said issue of said paper the defendant so wrote, published and circulated the article headed 'Notice, Reward,' a verbatim copy of same is attached hereto and made a part of this agreement, and that in said issue of said paper said defendant so wrote, published

and circulated the article, '4th at Lees Mill,' a verbatim copy of which is hereto attached and marked exhibit C and made a part of this agreement, and that in the issue of said paper of June 19, 1908, the defendant so wrote, published and circulated the article entitled 'Two Old, Blind Mares Come a Tearing Down the Wilderness,' a verbatim copy of which is hereto attached and marked exhibit D and made a part of this agreement, and in same issue of said paper said defendant so wrote, published and circulated the article entitled 'Queries,' a verbatim copy of which is hereto attached marked exhibit E and made a part hereof, and that in the issue of said paper of date July 3, 1908, defendant so wrote, published and circulated an article entitled, 'Put Up or Shut Up,' a verbatim copy of same is hereto attached marked exhibit F and made a part of this agreement.

"4. That in the issue of said paper of date July 24, 1908, the defendant published and circulated, but did not write or know of the writing or publication of or circulation of at the time, the article entitled 'Afraid of the Truth,' a verbatim copy of which is hereto attached marked exhibit G and made a part of this agreement, and in the same issue of said paper the said defendant published and circulated the article beginning 'The Editor of the News Will Give,' which is attached hereto marked exhibit H and made a part of this agreement, but the defendant did not write said article and was not in the town when same was published and did not know of its publication at the time.

"5. That at the time of the publication of said articles Hon. W. B. Powell was judge of District Court of Newton County, Texas, and a candidate for re-election, and the plaintiff, John M. Horger, was the clerk of the District Court of Newton County, Texas, and a candidate for election to the Legislature.

"6. That Hon. W. B. Powell is a second cousin of the wife of John M. Horger, and was during all of the time mentioned in this agreement.

"7. Said suit of John M. Horger vs. J. R. West has been by agreement of attorneys at the present term of this court transferred to the District Court of Orange County for trial, and said attorneys have agreed that the Hon. W. B. Powell is disqualified to try said cause.

"8. Hon. W. B. Powell had printed and circulated throughout the district on and after July 18, 1908, the letter which is attached hereto marked exhibit I and made a part of this agreement.

"9. Defendant in open court stated he desired to prove the truth of the publications complained of and offered to tender witness for said purpose, but the court thought such testimony was not admissible, and such testimony was therefore not admitted, and that is what is meant by the beginning of this agreement with reference to ruling made as to the admissibility of testimony, and this is the only testi-

mony ruled out by the court, and no other testimony being offered, this is a full statement of facts.

"We agree that the above is a true and correct statement of facts upon which the cause may be determined in open court this September 12, 1908.

"W. D. Gordon,
"Geo. E. Holland,
"Attorneys for the State.

"Approved as qualified by the judgment.
"W. B. Powell, Judge.
"Crook, Lord & Lawhon,
"Attorneys for Defendant."

Except as here noted, all the publications referred to had relation to the injunction suit, and since we have agreed that Judge Powell, by reason of his relation to the plaintiff in that suit, was disqualified to try the same, and that consequently his orders made therein were coram non judice, discussion will be limited to those parts of the publications relating to the criminal action as follows: It being admitted that the criminal action was pending, and that Judge Powell was judge of the court, and that all the publications were made as charged except as here noted, relator wrote, published and circulated exhibit "A," which in effect charges that Judge Powell allowed Horger to select jury commissioners and conspired with him · to so select the commissioners as to stock grand juries with a view of securing bogus indictments against their enemies, and especially against West, the last clause of exhibit "C" charging that Judge Powell allowed Horger to select jury commissioners and thereby procure indictments against West. It was agreed also by the parties that relator published and circulated but did not write nor at the time know of the publication of exhibit "G," which ostensibly, replying to a circular issued by Judge Powell, charges or states that relator had been acquitted of every charge their stocked grand juries had preferred against him except one, of which he would have been acquitted had not the judge continued it, because there was no evidence to convict and the judge wanted to hold it over him, and that he had charged the judge with conspiring with Horger to stock the grand juries.

In his answer before Judge Powell petitioner denied any intent to commit contempt, but avowed the truth of the matters he had published, and upon trial offered to make proof of the same, which at the time the court refused to allow, but during the trial, the State having withdrawn its objection to the proof, the petitioner being offered the opportunity to make proof, declined to offer any evidence. "The power to punish for contempt is justified only by necessity. It is not given for the private advantage of the judge, but to preserve to him that respect and regard of which the court can not be deprived and

maintain its usefulness. That the law may be administered fairly, uninterrupted by influences that might affect the rights of the parties or bias the mind of the judge, that the court may command respect so essential to make the law respected and that the streams of justice be kept pure. If the court be scandalized, its motives or integrity impugned in regard to official conduct, the consequences can not but be baneful, the administration of the law embarrassed and impeded, the rights of parties endangered, and a calm and dispassionate discussion and investigation of causes prevented. The public has a profound interest in the good name and fame of their courts of justice, since all that affects the welfare of society, rights, property, liberty and life of the citizens is submitted for their decision. It is all important to the due administration of justice that the courts possess in full measure the confidence of the people whose laws they administer. Public journals have the right to freely criticise their acts. This is a constitutional right, but such criticism should be just, and with a view to promote the public good and not to give vent to private malice. No claim of privilege can be admitted for a judge except such as pertains to his official acts. Attacks on them, it is not his province as a private citizen to resent or defend. His official acts are the acts of the people imposed by them upon him, and it is their duty to defend against them or to give the judge power as an officer to do so for them. This protective power, this right of self-defense, as it were, must be in the courts and ought to be exercised when necessary to the due safeguarding of the people for the honor and integrity of their courts, yet since its exercise is in some sense a trying of a case in which the judge personally is interested though not a nominal party, extreme caution is required that the judge in redressing a public wrong shall not also find revenge for his private grievance."

We do not think that relator should be deemed guilty of contempt, this being a case of criminal contempt, constructive contempt, as to the publication out of his office made in his absence without his knowledge. The finding of the district judge that the words used in exhibit "A" and above referred to and part of exhibit "C," both having reference to the pending criminal suit, were defamatory and calculated in their nature to obstruct and impede the administration of justice, embarrass the judge in the trial of the pending criminal action, and, therefore, constitute contempt of court, we sustain. We understand and hold the law to be that since by his own admission relator had made, published and circulated the above referred to defamatory matter against the judge, and that having the privilege, if he desired, to justify by proving the truth thereof, and having declined to do so, that, notwithstanding the district judge did not in his findings specifically adjudge the defamatory matters to be false, that his findings are yet sufficient to justify his conclusion and judgment.

It is claimed that the judgment is void because embracing two matters, one within and the other without the jurisdiction; one fine and punishment was inflicted for both of the alleged offenses. We think it is going quite too far to nullify the judgment of a court of superior jurisdiction or general jurisdiction, to use a Texas term, having power both of the subject and of the person, because there may have been error in a finding of fact or a conclusion of law as to one of the allegations. At most, in such case the judgment would be erroneous and not subject to correction in a proceeding of the kind before us. It is going quite far enough to require that it shall appear in the proceeding for constructive contempt that the matter and the person were within the jurisdiction and that the facts showed power in the judge to render the particular judgment. This, however, seems to be the state of the law in Texas and elsewhere. Under our statute relating to criminal libel it is provided, article 727, subdivision 5, it is criminal libel to make and publish of and concerning a person in office a statement conveying the idea that he had been guilty of a malfeasance rendering him unworthy of the place. By article 746 the truth of such statement may be successfully offered in defense of a criminal prosecution. While the charge made by relator against Judge Powell does not in terms characterize his alleged conduct as such malfeasance as would render him unfit for the position he held, we think that is a necessary implication. If in a prosecution for criminal libel a defendant must be convicted unless he make proof of the truth of the matter, we think that while recognizing that the rules of evidence in criminal prosecutions apply to proceedings in criminal libel, the person charged in the latter proceedings as in the former ought to be required to carry the onus or burden of proving the contemptuous imputation to be true when afforded the opportunity to do so, and that if he declines to do so he may well be adjudged guilty. See Rapalje, sec. 126, citing 16 Howard P. (N. Y.), 549. It is admitted that relator declined to offer proof of the truth of his charge, and the judge was, therefore, authorized to consider the falsity thereof as a fact, and such finding is of necessity contained and implied in the judgment against him. When the record shows all the facts and there is no controversy over them and the party refuses to offer proof of the only matter that could justify or excuse his act, he is in no condition to complain if the court conclude that he was unable to adduce the fact that would justify him. It is true the judge did not specifically find the falsity of the imputation, but such a finding is inferred from the nonproduction of' proof of the truth of the charge. When it is said in our adjudged cases and elsewhere that in constructive contempt the court must have jurisdiction of the matter and of the person and also authority to render the particular judgment, it is not to be understood that the court shall find and declare in its judgment facts beyond those necessary to the legal conclusion that arises out of the facts found. It ought to be assumed

in the absence of all evidence to the contrary that a judge of a court is not guilty of official malfeasance, and as a matter of public policy he ought not to be subject to those imputations which, if true, render him unworthy of his position and in effect compel him to become a witness in his own behalf in a hearing before himself in order that the record shall show the imputations to be false.

As authorities upon the proposition that the judge had no jurisdiction of the injunction suit, and, therefore, the relator was not in contempt in making the defamatory publications regarding it, see Ex parte Wimberly, 57 Miss., 437; 2 High on Injunction, sec. 1415; Ex parte Breeding, 90 S. W. Rep., 634; Gulf, C. & S. F. Ry. v. Looney, 95 S. W. Rep., 691.

On the holding that the judge's finding need not repeat matters set up at large in the moving papers, see Hurd, H. C., sec. 336; Rapalje on Contempt, sec. 129; Ex parte Cash, 50 Texas Crim. Rep., 623, 99 S. W. Rep., 1118.

As to the objection that relator was adjudged guilty on both charges, while the court had no jurisdiction of one of them, besides what is said above, see Hurd, H. C., sec. 339.

The application for writ of habeas corpus is refused.

*Relator committed.*

McCord, Judge, not sitting.

### ON REHEARING.

#### December 8, 1910.

COBB, SPECIAL JUDGE.—Counsel vigorously assails the opinion as subversive of the settled law and counter to precedent in that instead of pointing out in the judgment of the trial court the very words held to be contemptuous, the opinion summarized the findings deemed sufficient to justify the judgment. It is adjudged with clearness and in unmistakable terms in Ex parte Cash, 50 Texas Crim. Rep., 623, 99 S. W. Rep., 1118, that though the mere adjudication in the body of the judgment be insufficient, the moving papers indicating the particular matter of contempt may be looked to in aid of the findings in the judgment. To the same effect see Ex parte Smith, 40 Texas Crim. Rep., 179, 49 S. W. Rep., 396. These cases are in entire harmony with those holding that the facts of contempt must appear in the judgment entry when a party is brought to trial without a preliminary written motion setting forth the matter of contempt.

' In the motion against petitioner all the publications made by him are set forth as exhibits and parts and they thus constitute part of the moving papers, and, therefore, need not be set out in the judgment. There is no controversy about the facts, and we think, taking the publications as a whole, the trial judge was not unreasonable in the conclusion that some of them referred to the pending criminal

case and were contemptuous. He had the right to consider them all in forming his estimate of the spirit, intent and effect of those relating more directly to the criminal case. 3 Ency. Ev., p. 455. If it be that Judge Powell would have reached a wiser conclusion had he agreed with counsel that the publication did not relate to the pending criminal case, yet if there was evidence consistent with his finding, we do not think we should hold the judgment void on the ground that he may have erred in estimating the cogency of the proof.

It is not required that the commitment set out a statement of the facts or evidence in constructive contempt of the kind before us, the factum of contempt being recited in the judgment and the evidence thereof in the moving papers. "Ex parte Duncan turned upon jurisdiction," says Davidson, P. J. He then says: "If the jurisdiction of the court properly attached to the person of the relator and the subject of contempt and the facts showed contempt, this writ should be refused," and he holds that there was no jurisdiction because there was no record of the order Duncan was charged with disobeying. In Robertson's case, 27 Texas Crim. Rep., 628, 11 S. W. Rep., 669, it is held that a judgment of a justice of the peace against a constable for failure to execute a writ of sequestration was void for failure of a finding that he could have executed the writ, and that the writ of commitment should have been for criminal contempt, and not, as it was, for civil contempt, and that failing to recite the facts showing power in the justice to punish the writ was invalid. In Ex parte Kearby, 35 Texas Crim. Rep., 531, 34 S. W. Rep., 635 and 962, there was no commitment and the court says simply this, that a commitment should show the cause for commitment. The commitment here shows clearly that it was upon a judgment of contempt.

Touching the third paragraph of the motion, we need only say it presents in other guise matters already considered. We do not think the Green's case, 46 Texas Crim. Rep., 576, 81 S. W. Rep., 723, goes further than to hold that where the publication evidently appears to refer to no pending case, it can not constitute contempt. One newspaper article was in evidence; there was nothing in it to indicate a certain case; no evidence that Green was writing of a certain pending case. So, if the judge held that the publication related to a certain pending case there was error in law in that he found a fact of which there was *no* evidence, and not a mere mistake as to the probative force of evidence. This court was not there called on to review or nullify a judgment based on evidence, but held the judgment null because an essential fact had no basis in evidence.

We do not think the existence of facts that would sustain a conviction for contempt, though shown by testimony before the trial court, would meet the requirement that the very facts of contempt

Vol. LX. Crim.—32.

be found, if the judge do not find the facts, the existence of which is shown by the evidence, but given jurisdiction and evidence of the facts which amount to contempt embraced in the motion, if the judge finds the facts, the judgment of conviction is unimpeachable. If the publication do not refer to a pending case or the judge do not so find, though there be proof of such fact or if there be entire absence of evidence of the fact, though found, the judgment of contempt could not be sustained. If the facts found be not in law contempt, the judgment can not stand, but it is the facts of contempt that must be found, that is, the bare facts constituting contempt and not the evidence. A judgment can not be held for naught for want of recital of the evidentiary facts. Here the judge finds that the publication set forth in the motion, and not simply the extracts, were made; that they related to the pending criminal case in his court; that they were scandalous and were designed and calculated to influence the result of such case and were contempt, but he does not set out verbatim these publications in the judgment entry. Is it, therefore, to be said that he does not find the facts sustaining the judgment? He says, the publication taken all in all shows contempt. They are all in the record, and while we hold he could not convict of contempt in the civil case because he had no jurisdiction, it does not follow that he could not consider all the publications in judging of the intent and effect of those relating to the criminal case. This court is not departing from the doctrines heretofore announced in the cases cited by counsel and has no inclination to do so. Neither has this court a disposition to ignore the established rules respecting the integrity of judgments of courts having jurisdiction of matter and person. We do not feel inclined to go beyond what has heretofore been determined in excepting contempt cases from the general rule of presumption in favor of judgments of courts of original jurisdiction to the effect that in contempt the facts constituting contempt must exist and *appear* in the record, either in the moving papers or the judgment entry. The trial judge passes on the *weight* of the evidence and his judgment is not to be annulled in a *collateral* proceeding, because, if it be so, this court does not think the evidence *strong* enough to justify his findings, not that we in this case differ with the trial court on this point.

The motion is overruled.

*Overruled.*