**Ex parte ADAIR.**
No. 14076.

Court of Civil Appeals of Texas. Dallas.
July 1, 1949.

W. E. Pinkston and W. H. Hall, both of Dallas, for appellant.

Gene Bailey, of Dallas, amicus curiae.

YOUNG, Justice.

Material facts antecedent to the present case are these: In a divorce action instituted by his wife, Gertie Mae Adair, and following a jury trial, judgment of divorce was rendered against appellant as of March 20, 1947, but dated March 4. In this decree the mother was awarded custody of their minor child and defendant Adair ordered, pursuant to Art. 4639a, Vernon's Ann.Civ.Sts., to pay into the court registry the amount of $10 per week toward support and maintenance of the child, Vera Mildred Adair (such sum having been found by the jury and fixed by the court as an award that defendant was able to pay). The payment for support was to begin March 15, 1947 and continue each Saturday thereafter until said child should reach the age of 16 years.

On January 3, 1949, the sworn affidavit for contempt against Adair, filed by the former wife and resisted by him, was heard by the court with result that he was adjudged in contempt for failure to obey above order in matter of child support, with punishment fixed at confinement for three days in the Dallas County jail, the judgment reciting that he (Adair) be "further confined in said jail until he has fully purged himself of such contempt by full observance and obedience of the decree of this court referred to above by the payment of the sum of $940.00 for the support of his children." At the hearing it was developed that nothing had been paid by contemner under the divorce judgment toward support of said minor. After remaining in jail for three days, Adair paid the costs of court incident to the contempt proceeding and then filed the instant petition in nature of habeas corpus to effect his release from further confinement under the contempt judgment then outstanding. On hearing of this application for habeas corpus, petitioner was remanded to jail, judgment of the trial court reciting that, "having examined carefully the writ of habeas corpus and return thereon and all documents attached to said writ and

having heard all of the testimony offered by both sides, and the court being of the opinion that it has jurisdiction and further of the opinion that the said Chat Adair is legally held in custody and under restraint of his liberty by the said J. E. Decker, Sheriff aforesaid; * * *." Exception to and notice of appeal was taken from said order, petitioner by the same order being denied bail. After appeal was perfected, a motion was presented by Adair to another district judge of Dallas County for enlargement upon bail pending appeal, which was granted, and he is now at liberty under appearance bond set and furnished in sum of $1,000.

Since we have here an appeal from a habeas corpus proceeding based upon a commitment for contempt in a civil case, it is properly addressed to this court. State v. Morris, Tex.Civ.App., 208 S.W.2d 701, error refused n. r. e.; 21 Tex.Jur. 482, sec. 55.

Passing to the merits of the appeal, although affidavit, pleadings, and judgment, are all regular in form, it appears that the testimony heard in the original contempt proceeding, on which Chat Adair was held in contempt, was not introduced in evidence in this, a collateral proceeding in habeas corpus. The judgment for contempt which ordered Chat Adair confined in jail recited that "The Court having heard the evidence," etc. Such evidence at that time was the basis of the original finding of the court in the contempt proceeding. Without such evidence being introduced in the habeas corpus proceeding to show what the court had before it when it committed the defendant for contempt, we cannot say that the original commitment was void. Ex parte Ellerd, 71 Tex.Cr.R. 285, 158 S.W. 1145, Ann.Cas.1916D, 361; Ex parte Burns, 133 Tex.Cr.R. 77, 109 S.W.2d 211.

This appeal is from the judgment remanding defendant after the hearing of the writ of habeas corpus. On a proceeding in habeas corpus it must appear that the judgment in the original contempt proceeding and the commitment thereunder were void before the writ of habeas corpus can be granted. Ex parte Westbrook, 129 Tex. 95, 84 S.W.2d 700, and authorities

**326**

there cited; also Ex parte Genecov, 143 Tex. 476, 186 S.W.2d 225, 160 A.L.R. 1099.

It is true that on trial of the habeas corpus proceeding here appealed from, Adair testified that at the time he was committed and since that time it has not been within his power to pay the amount of $940 child support; that as to his earning capacity, etc., he had no property other than two acres of land in Dallas County, the value of which he did not know; that he had no prospects of raising $940 while he was confined in jail; testifying further with reference to the nature of his employment while in West Texas after judgment of divorce. However, there is no showing in the record that this was all the evidence heard by the trial judge at the trial on which the contempt judgment was based; and in the same connection it is to be observed that attorneys for appellant not only failed to bring forward into this record all testimony heard on the original contempt proceeding, but objected to any evidence bearing on said trial and commitment as irrelevant and immaterial.

■ Before the trial court or this court, for that matter, could justifiably discharge appellant under habeas corpus proceedings, there must be established a lack of evidence in the original contempt proceedings to support that judgment and his commitment thereunder. The situation on date of the contempt hearing is the determinative time on which is based petitioner's ability to pay, and not the situation at some later time on application for habeas corpus; and in the absence of evidence heard by the trial court at the time of the original hearing, when he was held in contempt, the trial court could not have discharged him.

■ But appellant strenuously argues that under instant facts and circumstances the trial court exceeded its powers in a sentence of confinement beyond the three days and $100 fine authorized by Art. 1911, Vernon's Ann.Civ.Sts. While it is true that Judge Dixon was limited to terms of the cited article in assessing punishment for an admitted disobedience of the 1947 judgment, only this part of the prior order was punitive; the remainder of said judgment requiring further confinement until a purging by payment of the definite amount of money arrearage being remedial and not in nature of a continuing punishment. It was but in aid of the court's undoubted power to enforce its own judgments and decrees. Rule 308, Texas Rules of Civil Procedure. In Ex parte Tinsley, 37 Tex. Cr.R. 517, 40 S.W. 306, 311, 66 Am.St.Rep. 818, the same point was raised, the Court of Criminal Appeals there holding: "If, under this statute, it was given to a party to refuse to obey the orders of a court by merely submitting to a fine of $100 and three days' imprisonment, and then go free, still contumacious of the order of the court, the court would be rendered powerless to enforce its orders. * * * So far as the statute with reference to punishments for contempt is concerned, that is a mode of enforcing the rights of the court and of preserving its respect and dignity. It is a punishment. The other is not a punishment, but a specific mode of enforcing a particular duty." See also Ex parte Klugsberg, 126 Tex. 225, 87 S.W.2d 465; 9 Tex. Jur., sec. 26, p. 611.

Appellant calls attention to our holding in the unreported case of Brewer v. Brewer, of date February 6, 1948, as controlling of the present appeal. Brewer there occupied a situation quite different from that reflected here, in that he was finally discharged from all custody in the same judgment that rearranged his arrears of child support to begin in future installments at $5 per week. We regard the two opinions as distinguishable under widely different facts, but, to the extent of conflict, if any, we adhere to the principle announced in Ex parte Tinsley, supra.

■■ We are familiar with the widely accepted rule that inability of an alleged contemner, without fault on his part, to render obedience to a decree of court is a good defense; see annotations to 120 A.L.R. 705; such plea, however, being properly maintainable on the hearing for contempt, rather than after incarceration and upon an ex parte proceeding in habeas corpus.

The trial court's judgment remanding Chat Adair to the custody of the Sheriff

of Dallas County was, therefore, the only judgment it could have entered on the record here. It is therefore affirmed.

BOND, Chief Justice (dissenting).

The opinion of the majority is tantamount to affirmance of a life sentence for not complying with the order of the 44th District Court directing relator to pay into the registry of said court the sum of $10 per week towards the maintenance and support of his child, Vera Mildred Adair, and to pay the sum of $940, as the price of his liberty "until further orders of the court."

On March 4, 1947, in the 44th District Court the Hon. W. L. Thornton, Judge of said court, entered the order upon which the contempt is based. On December 29, 1948, Gertie Mae Adair, divorced wife of the relator and mother of said minor child, filed in 44th court a motion for contempt against her divorced husband for his failure and alleged refusal to comply with said order of the Judge of the 44th District Court requiring him to make $10 weekly payment; arrearages at time of filing the motion in the amount of $940. On said motion the Hon. Dick Dixon, Judge of the 95th District Court, directed notice to be issued and served on the respondent, relator here, to be and appear before said court on December 30, 1948 and show cause, if any he may have, why he should not be adjudged and held to be in contempt of the court as prayed for in the affidavit of Gertie Mae Adair. In due time the relator, Chat Adair, appeared and made answer under oath, material here, that "he should not be punished for contempt because he disavows any intention of disobeying the orders of this court, and alleges that he is only a farm boy, and his ability to earn money is limited and he is not able to pay $10 per week for the support of Vera Mildred Adair, but can pay $3 per week for said minor child's support * *. At and during the trial of this cause defendant was forced to spend all of his money, and it was necessary for him to leave the farm and try to find work as a day laborer elsewhere and was unable to find work which would enable him to pay $10 per week for the support of Vera Mil-

dred Adair, and that he was grief stricken for more than a year, unable to do good work during that time." It will be observed that the movant in the contempt proceedings did not challenge the inability of the contemner to pay the child's allowance or pay the arrearage of $940 required to purge himself of contempt of court. And it is strange, but true, that she does not appear here as a respondent, or aggrieved party; only the judge making the order of contempt enters appearance by attorney amicus curiae.

On January 3, 1948, the judge of the 95th District Court entered the following judgment:

"On this the 3rd day of Jan. A.D. 1948 came on regularly to be heard, the sworn motion of plaintiff to adjudge the said defendant to be in contempt of this court for failure to observe the order, judgment and decree of this court of record in Minute Book X at page 436 of the minutes of this court; and came the plaintiff-defendant in person and by attorney, and all matters of law and fact having been submitted to the court, and the court having heard the evidence, the pleadings and the argument of counsel is of the opinion, and so finds that the defendant has failed to observe and obey the order, judgment and decree shown on the records of this court referred to above, and that he is and should be adjudged to be in contempt of this court for such failure and disobedience;

"It is therefore ordered, adjudged and decreed by this court that Chat Adair, defendant, be, and he is adjudged to be in contempt of this court for such failure and disobedience, and the punishment therefor is fixed and assessed at confinement by the Sheriff of Dallas County, Texas in the Common jail of Dallas County, Texas for a period of 72 hours, and thereafter further confined in said jail until he has fully purged himself of such contempt by the full observance and obedience of the decree of this court referred to above by the payment of the sum of $940.00 for the support of his children."

Upon said judgment the court caused to be issued commitment commanding the Sheriff of Dallas County to take into cus-

tody and commit relator to jail and safely keep him until "the fine of ———— assessed in said order, together with all costs herein are fully paid, and until the term of imprisonment of 72 hours in jail provided in said order shall have expired and thereafter he has paid the sum of $940.00 and all costs of this proceeding, or *until he is otherwise legally discharged."* (Italics supplied).

The contemner did not appeal from the judgment finding him in contempt of the order entered, but in accordance therewith served the 72 hours in jail and paid the costs of court; and, from the excess in said judgment confining him in jail until "he has paid the sum of $940.00, or until he is otherwise legally discharged", the contemnor has perfected an appeal to this court presenting assignments of error challenging the validity of the judgment and commitment only as to the excessive punishment.

In the case of Ex parte Depew, 119 Tex. 63, 24 S.W.2d 813, the relator was adjudged guilty of contempt by the 53rd District Court of Travis County for the violation of an order issued by a Criminal District Court of that county, subsequently the 98th Judicial District. Our Supreme Court held: "Under the authority of Ex parte Gonzalez, 111 Tex. 399, 238 S.W. 635, one court in no case is authorized to punish contempt in another court; hence the proceedings by which relator was adjudged guilty of contempt are void, and he is entitled, under the writ of habeas corpus sued out, to be released from custody." In the cited case, Ex parte Gonzalez, the relator, in the 65th District Court of El Paso County, was restrained from disposing of or incumbering or removing from the jurisdiction of the court community property of himself and wife. No further proceedings were had in the case in the 65th District Court, when the cause was transferred by the judge of that court to the 41st District Court of El Paso. The Supreme Court held that the two courts of El Paso County are separate and distinct courts, and the jurisdiction of each to be plenary and exclusive as to causes filed therein until a transfer is made from one court to the other, hence one court

is not authorized to punish contempt of another court.

While in the instant case the order for child support was, on March 4, 1947, made by Judge Thornton of the 44th District Court, the contempt order was made by Judge Dixon of the 95th District Court. True, Judge Dixon signed as "Judge 101st and 44th District Courts." No transfer of the cause was made, as far as this record reveals, from the 101st or the 44th District Court to the 95th District Court; and no showing that the judge of the 95th was assigned to either of said other courts; and there is no evidence that the relator was guilty of contempt of the order of the 44th or 101st District after the 95th District Court took cognizance of the pending cause in the 44th Court. Therefore it is extremely doubtful that the Judge of the 95th District Court had jurisdiction to punish as for contempt of the order of the 44th District Court committed while the cause was pending in that court. However, as to this, we need not labor; the judgment for the excess punishment appealed from finds no support in pleadings or evidence; it is otherwise void.

Article 4639a, Vernon's R.S. makes provision for the court in divorce proceedings, after inquiring into and ascertaining the financial circumstances of the parents, to make order for allowance for their child's or children's support, directing either of the parents to make periodical payments for the benefit of such child or children until such child or children shall have reached the age of sixteen years; and to enter judgment in a fixed amount. It empowers such court to enforce such order, or judgment, by civil contempt proceedings after *hearing and ascertaining the ability* of such parent to contribute to such support. Under this Article *the court making the order* retains jurisdiction over the child and the enforcement of its judgment, or order, until such child is sixteen years of age. It is a continuing jurisdiction for revision of its orders (italics supplied). In the case of Ex parte Birkhead, 127 Tex. 556, 95 S.W.2d 953, 955, the Supreme Court, in construing the above article, said: "If, after an order for contribution has been made, conditions

change so that it is for any reason unjust or improper, the court has power to again review the matter and enter such further orders and decrees as the circumstances and facts may require. If the conditions are such that the spouse becomes unable to make the contribution that he has been ordered to make, and this through no willful fault of his own, such would be a good defense against contempt proceedings. Finally, should the district court act illegally or arbitrarily in the matter, the injured spouse has his remedy by habeas corpus in this court."

In the case of Ex parte Erwin, 145 Tex. Cr.R. 504, 170 S.W.2d 226, 227, the court of Criminals Appeals of Texas, dealing with the excess punishment in an otherwise valid order of contempt, announced a salient rule of law, pertinent here, viz.: "It seems to be the rule in a majority of the states of the Union that when a verdict and judgment are excessive only in the maximum penalty, if there be a minimum properly assessed in the judgment, when such minimum has been served, a prisoner is entitled to his discharge upon habeas corpus, such doctrine being based upon the proposition that the excessive portion thereof, not being authorized by law, is void. (Citing numerous authorities.) The rule in the Lee Lim v. Davis case [75 Utah 245, 284 P. 323, 76 A.L.R. 460], supra, has been tersely stated by this court in the case of Ex parte Pruitt, 139 Tex. Cr.R. 438, 141 S.W.2d 333, 335, as follows: 'Relator may bring himself within the rule announced in 76 A.L.R. at page 476, as follows: "In the case of a sentence which is merely excessive it seems to be well settled, with the exception of a few early cases, that if the court had jurisdiction of the person and subject-matter of the offense, such sentence is not void ab initio because of the excess, but that it is good so far as the power of the court extends, and is invalid only as to the excess, and therefore a person in custody under such sentence cannot be discharged on habeas corpus until he has suffered or performed so much of it as it was within the power of the court to impose." ' "

In the case of Ex parte Kottwitz, 117 Tex. 583, 8 S.W.2d 508, the relator was held in contempt of court for failure and refusal to obey an order in a divorce action, and committed to jail until he purged himself of contempt, and "until otherwise ordered by this court." There the Supreme Court, opinion by Chief Justice Cureton, held that the order was void because of the uncertainty of punishment. So, in consonance with the aforesaid authorities, the record here shows that the relator is unable to pay the $940 for the price of his liberty; that he was unable to pay the $10 per week for which he suffered the 72-day imprisonment in jail,—thus satisfied the only legal punishment imposed upon him. The excess punishment is illegal and arbitrary. In compliance with the order, relator's liberty rests on conditions with which he is unable to comply in order to purge himself of contempt by payment of the sum of $940.

In Ex parte Young, 103 Tex. 470, 129 S.W. 599, the parties involved had been found guilty of contempt and were punished by fine of $100 and three days in jail. The order also contained a direction that each of the parties should be held in custody until he purged himself of the contempt in such manner and form as may be directed by the judge. The matter came up before the Supreme Court on writ of habeas corpus and that court held that so much of the order as charged and defined a definite imprisonment was valid, notwithstanding the concluding indefinite portion that he is committed until he purges himself in compliance with the orders of the court. And, too, the Supreme Court held that when the judgment of contempt fixes a punishment in excess of that authorized by law, the entire judgment is not void, but only so much of it as is in excess of that which the court has power to assess, and that a person in custody under such sentence will not be discharged on habeas corpus until he has suffered or performed so much of it as the court had power to impose. So, in the instant case, the court having imposed a jail sentence of 72 hours, or 3 days, against relator, which undoubtedly it had the statutory power to do, Art. 1911 R.S., the additional sentence providing that relator be held in custody until he paid the whole of arrearages in amount

of $940, or until further orders of the court, was void. When relator suffered and satisfied the lawful penalty—served the imprisonment, he was entitled to be fully discharged; and the court was thus shorn of its power to further hold relator on the adjudicated contemptuous act for his failure to pay the arrearages of $940, which he was unable to pay. It was not within the power of the court to impose corporal punishment to effect further obedience to its orders; but only such delinquent disobedience amounting to disrespect, or contempt of the court, is punishable. Contempt orders must be based upon present or past events of disobedience, and where a party has once been found guilty of such disobedience and has purged himself of the contemptuous adjudicated act, he cannot subsequently be brought to trial on the same offense.

The remedy that is termed civil contempt is not against the dignity of the State's court, but against the party in whose behalf the violated order is made. 13 C.J. 6; 17 C.J.S., Contempt, § 6. It will be seen in the affidavit of the aggrieved party in this contempt proceedings that she makes no allegation of willful failure or refusal on the part of relator to comply with the child support order; or that the relator was able to pay the $940. On the other hand, relator filed answer and offered proof, uncontroverted, that he is unable to pay the $940, and had not been able to pay the $10 per week. How, then, could he purge himself and satisfy the court's order while confined in jail? He testified:

"Q. Where have you been since the 2nd or 3rd of January 1949? A. I have been over here in the Dallas County jail.

"Q. You were there as a result of contempt proceedings here held in this court and committed over there? A. I was.

"Q. And you served more than the seventy-two hours? A. Yes, sir.

"Q. And you have paid the court costs of the contempt proceeding? A. I have.

"Q. Now. Mr. Adair, when you were committed there or since that time, has it been within your power to pay the sum of $940.00 adjudged against you here in

contempt, for failing to pay that amount for the support of your child? * * *

"Q. (By Mr. Hall). Now, Mr. Adair, what business or occupation do you follow? A. I am a farm laborer.

"Q. Sir? A. I am a farm laborer.

"Q. Now, do you own any property or stocks or bonds out of which you have an income? A. No.

"Q. Do you follow any business or profession where you draw wages or salary or anything of that kind? A. No, sir.

"Q. Sir? A. No, sir.

"Q. Now then, while you are confined there in jail, are you able to earn any money? A. No, sir.

"Q. Are you able, by pledging property, mortgaging property or borrowing in any way to obtain $940.00? A. No, sir.

"Q. Have you any way known to you to raise that amount? A. No, sir.

"Q. Have you got any prospects of raising that amount while you are confined there in jail? A. No, sir.

"Q. And that is your condition when you were on this contempt proceeding? When it was heard down here, were you in that condition? A. Yes, sir."

It has been held that contempt cases are excepted from the general rule of presumption in favor of judgments of courts of original jurisdiction, to the effect that in contempt the facts constituting such must exist and appear in the record, either in the moving papers or the judgment entry. Ex parte West, 60 Tex.Cr.R. 485, 132 S.W. 339. Thus jurisdiction of contempt cases consists not of the plenary power to rule in certain way—the right way. Judgments rendered otherwise are described as void in excess of jurisdiction. In proceedings of this nature, technical rules of practice are not to be given controlling effect. Evidently the financial circumstance of the relator is such that to confine him in jail until he performs the impossible, is nothing more than a life sentence—unjust and arbitrary; he should be discharged. Ex Parte DeWees, Tex. Sup., 210 S.W.2d 145.

I respectfully dissent.