**Ex parte Michael DOTSON, Applicant.**

No. 73986.

Court of Criminal Appeals of Texas, En Banc.

June 5, 2002.

---

**6.** *See id* at 841.

**7.** *See id.*

William A. Thau, III, Corpus Christi, for Appellant.

Douglas K. Norman, Asst. DA, Corpus Christi, Matthew Paul, State's Atty., Austin, for State.

· *OPINION*

JOHNSON, J., delivered the opinion of the Court, in which MEYERS, PRICE, HERVEY, HOLCOMB, and COCHRAN, JJ., joined.

This is an original application for writ of habeas corpus. A Nueces County grand jury indicted James Vannoy for the offense of felony theft. On August 14, 2000, the state filed an application to subpoena three witnesses, one of whom was applicant. On August 22, 2000, an investigator with the district attorney's office served applicant with the subpoena. Applicant refused to obey the subpoena, telling the district attorney that he was scared to "point the finger at someone." No writ of attachment was served.

A jury was selected, and the state put on evidence from its first witness in Vannoy's prosecution. Applicant failed to appear in court to testify. The trial court issued a writ of attachment, but applicant could not be located. Because the case could not be proved without applicant's testimony, the prosecution against Vannoy was dismissed with prejudice.

On September 14, 2000, the state filed a motion requesting that applicant be held in contempt for failing to obey the subpoena and, upon a finding of contempt, that he be sentenced to a term of confinement in the Nueces County jail. On September 27, 2000, the trial court held a hearing pursuant to the state's motion. Counsel for applicant argued that, under Art. 24.05 of the Texas Code of Criminal Procedure,[1] the only punishment which could be imposed for refusing to obey a subpoena in a criminal case was a fine of $500. The state argued that a subpoena is a court order and that the trial court had the power to

---

1. Art. 24.05 provides that "[i]f a witness refuses to obey a subpoena, he may be fined at the discretion of the court, as follows: In a felony case, not exceeding five hundred dollars; in a misdemeanor case, not exceeding one hundred dollars."

punish for contempt for failure to comply with an order.

The trial court found that Texas Rule of Civil Procedure 176.8(a)[2] is applicable to the extent that it authorizes punishment by contempt for failing to obey a subpoena. At the conclusion of the hearing, the trial court agreed with the state that a subpoena is a court order, and that, in the trial court's opinion, "there is no conflict between Rule 176.8 ... and Art. 24.05...." It further found that "if there is such a conflict, then the Court finds that and is of the opinion that Article 24.05 of the Code of Criminal Procedure is an unconstitutional infringement on the powers of the Court, the inherent powers of the Court and that it violates the separation of powers doctrine...." The court then found applicant in contempt and assessed punishment at 180 days confinement and a fine of $500. We are called upon to determine whether the trial court had the authority to confine applicant for contempt because of his failure to comply with a subpoena in a criminal case.

■ Generally, contempt is either direct, an act which occurs in the presence of the court, or indirect, an act done at a distance, such as disobeying an order of the court. 13 Tex. Jur.3d *Contempt* § 2

(1993). At the outset, we note that the instant case deals with criminal contempt.[3] The trial court's judgment of contempt repeatedly refers to applicant's "punishment" for contempt. Furthermore, the case against Vannoy had been dismissed with prejudice, and contempt as coercion to produce testimony was no longer useful. Criminal contempt was the only type available to the trial court. Clearly, the claimed contemptuous act, failing to answer a subpoena and appear in court, did not occur in the presence of the court. The state asserts that contempt will lie because the subpoena is a court order; applicant disagrees.

■ The issue is which statutory provision applies in these circumstances. One of our general rules of statutory construction is that a more specific statute or rule will prevail over a more general one. *Cheney v. State,* 755 S.W.2d 123, 126 (Tex. Crim.App.1988). Rule 176.8, by its placement in the Rules of Civil Procedure, applies specifically to civil proceedings. Art. 24.05, by its placement in the Code of Criminal Procedure and by its plain language, applies specifically to criminal cases. It is therefore reasonable to assume that the legislature intended to create different consequences for a given act,

---

**2.** Rule 176.8(a) provides that "[f]ailure by any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena is issued or a district court in the county in which the subpoena is served, and may be punished by fine or confinement, or both."

**3.** The distinction between civil and criminal contempt has been explained as follows:
The purpose of civil contempt is remedial and coercive in nature. A judgment of civil contempt exerts the judicial authority of the court to persuade the contemnor to obey some order of the court where such obedience will benefit an opposing litigant. Imprisonment is conditional upon obedience

and therefore the civil contemnor carries the keys of (his) prison in (his) own pocket. In other words, it is civil contempt when one may procure his release by compliance with the provisions of the order of the court.
Criminal contempt on the other hand is punitive in nature. The sentence is not conditioned upon some promise of future performance because the contemnor is being punished for some completed act which affronted the dignity and authority of the court.
*Ex parte Werblud,* 536 S.W.2d 542, 545–6 (Tex.1976) (citations and internal quotation marks omitted).

depending on the circumstances surrounding that act.

■ The case before us arose from a criminal case, and the sentence imposed constitutes criminal contempt. Because applicant's refusal to answer was in the context of a criminal prosecution, we apply the statute which is specific to such failure, Art. 24.05, and hold that such failure does not fall under the provisions of civil Rule 176.8. The penalty for failure to answer a subpoena in a criminal case is limited to the provisions of Art. 24.05. Because Art. 24.05 speaks only in terms of failure to answer a subpoena and does not speak in terms of contempt, it is unnecessary to decide whether a subpoena is a court order. The punishment assessed by the trial court exceeded that permitted by law, and the trial court did not act within its authority.

Relief is granted.

WOMACK, J., filed a concurring opinion.

HERVEY, J., filed a concurring opinion, in which HOLCOMB, and COCHRAN, JJ., joined.

KELLER, P. J., filed a dissenting opinion, in which KEASLER, J., joined.

WOMACK, J., filed a concurring opinion.

I join the Court's judgment granting relief under our writ of habeas corpus. I reach that result on a different basis.

I agree with the Court that Rule of Civil Procedure 176.8(a) does not authorize a contempt action in a criminal case. This seems obvious.

Although the district court specified Rule 176.8(a) as its authority, any law that authorized the court's order would require us to deny relief to this applicant. The law that comes closer to authorizing the judgment of contempt is Section 21.002(a) & (b) of the Government Code.[1] Section 21.002 is not limited to civil cases as Rule 176.8(a) is. This statute, in its pre-codifi-

---

1. "(a) Except as provided by Subsections (g) and (h), a court may punish for contempt.

"(b) The punishment for contempt of a court other than a justice court or municipal court is a fine of not more than $500 or confinement in the county jail for not more than six months, or both such a fine and confinement in jail.

"(c) The punishment for contempt of a justice court or municipal court is a fine of not more than $100 or confinement in the county or city jail for not more than three days, or both such a fine and confinement in jail.

"(d) An officer of a court who is held in contempt by a trial court shall, on proper motion filed in the offended court, be released on his own personal recognizance pending a determination of his guilt or innocence. The presiding judge of the administrative judicial region in which the alleged contempt occurred shall assign a judge who is subject to assignment by the presiding judge other than the judge of the offended court to determine the guilt or innocence of the officer of the court.

"(e) This section does not affect a court's power to confine a contemner to compel him to obey a court order.

"(f) Article 42.033, Code of Criminal Procedure, and Chapter 157, Family Code, apply when a person is punished by confinement for contempt of court for disobedience of a court order to make periodic payments for the support of a child.

"(g) A court may not punish by contempt an employee or an agency or institution of this state for failure to initiate any program or to perform a statutory duty related to that program:

"(1) if the legislature has not specifically and adequately funded the program; or

"(2) until a reasonable time has passed to allow implementation of a program specifically and adequately funded by the legislature.

"(h) [This subsection, the subject of which was justice and municipal courts' dealing with the acts of juveniles, was repealed by the act of June 16, 2001, 77th Leg., R.S., ch. 1297, § 71(4), 2001 Tex. Gen. Laws 2978, 3009.]" TEX. GOV'T CODE § 21.002.

cation form,[2] came before us in *Ex parte Wilkinson*, 641 S.W.2d 927 (Tex.Cr.App. 1982).

Wilkinson and another person refused to testify before a grand jury. A district court held them in contempt, fined them $500, and ordered them imprisoned for 6 months. We issued the writ of habeas corpus.

The witnesses argued that Article 20.15, not the general contempt statute that is now codified as Section 21.002, controlled the district court. We agreed.

> If it can be argued, however, that said [statutes] are in pari materia, then under the rules of statutory construction the special statute, Article 20.15, would govern over ... the general statute.

> The two statutes are not, however, in pari materia. Article 20.15 and its forerunners have long been a part of our criminal procedural laws. The procedure involves only the district court and a witness who may be held in contempt for refusing to testify before the grand jury. [The general statute], enacted in 1971, deals with the contempt power of all courts concerning witnesses, officers of the court and others in a variety of situations. It is clear the two statutes are contained in different legislative acts, provide for different penalties, and are designed to serve different purposes

and objectives. The provisions of the statutes are irreconcilable and the special statute, Article 20.15, must prevail under the rules of statutory construction. Although [the general statute] is the latter enactment, there is no manifest intent that the general provisions thereof relating to any act of contempt before any court control.[3]

The Court uses similar reasoning today and reaches the same result.[4] I agree, on the basis of *Wilkinson*.

HERVEY, J., filed a concurring opinion in which HOLCOMB, and COCHRAN, JJ., joined.

I join the Court's opinion. Since applicant did not refuse to obey the subpoena in the court's presence and since applicant did not refuse to obey the subpoena after being ordered to do so by the trial court, the trial court had no inherent or statutory power to hold applicant in contempt based solely on his refusal to obey the subpoena.[1] The trial court, therefore, could only fine applicant according to the statutory procedures for punishing those who refuse to obey properly served subpoenas. *See* Articles 24.05, 24.06, 24.07, 24.08, 24.09, 24.10, Texas Code of Criminal Procedure. This case, therefore, does not require the Court to address whether Article 24.05 violates constitutional separation of powers princi-

---

**2.** Act of June 9,1971, 62nd Leg., R.S., ch. 831, §§ 1–3, 1971 Tex. Gen. Laws 2535, 2535, *as amended by* Act of June 16, 1973, 63rd Leg., R.S., ch. 657, § 1, 1973 Tex. Gen. Laws 1784, *and* Act of June 16, 1977, 65th Leg., R.S., ch. 827, § 2, 1977 Tex. Gen. Laws 2076, 2076, *and* Act of June 16, 1981, 67th Leg., R.S., ch. 674, § 4, 1981 Tex. Gen. Laws 2563, 2537.

**3.** *Wilkinson*, 641 S.W.2d at 932.

**4.** *See ante* at ——.

**1.** A trial court's inherent contempt power usually arises in "direct contempt" situations where the contemptuous acts occur in the

court's presence. *See Cleveland v. State*, 508 S.W.2d 829, 831 (Tex.Cr.App.1974) (court may use its inherent contempt power to enforce testimonial duty of a recalcitrant witness). A trial court's statutory Section 21.002 contempt power (a trial court probably has the same power as part of its inherent contempt power) usually arises in "constructive contempt" situations where the contemptuous acts usually involve a willful violation of a trial court's reasonably specific order. *See Ex parte Rhodes*, 974 S.W.2d 735, 740 (Tex.Cr.App.1998).

ples by usurping the judiciary's contempt power under Section 21.002, Texas Government Code.

Had the trial court ordered applicant to obey the subpoena and had applicant refused,[2] then this Court would have to address this separation of powers issue. But even then, there would be no separation of powers problem. The trial court could apply the statutory Article 24 procedures set out above to punish applicant for refusing to obey the subpoena. The trial court could also apply its Section 21.002 contempt power to punish applicant for refusing to obey the court's order which is a separate act from applicant's refusal to obey the subpoena.[3] *Compare Ex parte Edone*, 740 S.W.2d 446, 449 (Tex.Cr.App. 1987) (court could properly hold applicants in contempt *for violating court's order* to testify before the grand jury) *with Ex parte Wilkinson*, 641 S.W.2d 927, 933 (Tex. Cr.App.1982) (court could not properly hold applicants in contempt based only on their refusal to testify before the grand jury).[4] Under these circumstances where they are applied to punish separate acts, Article 24.05 and Section 21.002 can each be reconciled and given effect and neither

branch of government usurps a power that belongs to the other.

With these comments I join the Court's opinion.

KELLER, P.J., filed a dissenting opinion in which KEASLER, J. joined.

I believe that the district court had inherent power to punish contempt, and that power is in no way circumscribed by the statutory scheme. Alternatively, to the extent the statutory scheme might be said to circumscribe this power, it violates the Separation of Powers Clause of the Texas Constitution.

## I.

The Texas Constitution vests "[t]he judicial power" in the courts, including the district courts of this state.[1] The compulsion of witnesses and the punishment of contempt are both aspects of this power. In the federal system the United States Supreme Court has recognized their judicial character.[2] The Supreme Court has also recognized that federal courts have *inherent power*—power that exists even

---

**2.** That did not happen here.

**3.** This would not present a double jeopardy problem either. *See Rhodes*, 974 S.W.2d at 739–42 (double jeopardy principles barred criminal prosecution of father for interference with child custody due to his previous criminal contempt in a civil proceeding based on same conduct).

**4.** This Court's decision in *Wilkinson* was based on the record showing that the court held applicants in contempt for their refusal to testify before the grand jury and not based on their refusal to comply with the court's order to testify before the grand jury. *See Wilkinson*, 641 S.W.2d at 933. Under these circumstances, the court could only assess a penalty under a statute like the one here. *See id.*

**1.** TEX. CONST., Art. 5, § 1.

**2.** *Blair v. United States*, 250 U.S. 273, 280, 39 S.Ct. 468, 63 L.Ed. 979 (1919)("At the foundation of our federal government the inquisitorial function of the grand jury and the compulsion of witnesses were recognized as incidents of the judicial power of the United States"); *Juidice v. Vail*, 430 U.S. 327, 335, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977)("The contempt power lies at the core of the administration of a State's judicial system"); *see also Freytag v. C.I.R.*, 501 U.S. 868, 891, 111 S.Ct. 2631, 115 L.Ed.2d 764 (1991)(federal judicial power includes the authority to punish contempts with fine or imprisonment and to subpoena witnesses).

absent statutory authorization—to punish contempts.[3]

In *Chambers*, the Supreme Court addressed a federal district court's inherent power to impose financial sanctions for abuses of the judicial process.[4] The district court had assessed attorney's fees for bad faith conduct.[5] Although a scheme for assessing sanctions was provided by both statute and rule, the Court held that the scheme did not displace the trial court's inherent power to assess sanctions.[6] While Congress has the authority to limit the exercise of the inherent power of lower federal courts because those courts were created by act of Congress, the Supreme Court does "not lightly assume that Congress" has intended to do so.[7] Significantly, the Court held that a district court could resort to inherent power to punish abuse of the judicial system even when there existed statutory mechanisms for imposing punishment for the specific type of abuse in question:

> There is, therefore, nothing in the other sanctioning mechanisms or prior cases interpreting them that warrants a conclusion that a federal court may not, as a matter of law, resort to its inherent power to impose attorney's fees as a sanction for bad-faith conduct. This is plainly the case where the conduct at issue is not covered by one of the other sanctioning provisions. *But neither is a federal court forbidden to sanction bad-faith conduct by means of the inherent power simply because that conduct could also be sanctioned under the statute or the Rules.* A court must, of course, exercise caution in invoking its inherent power, and it must comply with the mandates of due process, both in determining that the requisite bad faith exists and in assessing fees. Furthermore, when there is bad-faith conduct in the course of litigation that could be adequately sanctioned under the Rules, the court ordinarily should rely on the Rules rather than the inherent power. *But if in the informed discretion of the court, neither the statute nor the Rules are up to the task, the court may safely rely on its inherent power.*[8]

We have recognized that courts possess inherent powers in criminal cases[9] and that these powers date back to early English common law.[10] We have defined inherent powers as "those powers required for the judiciary to perform its constitutional duties, preserve its jurisdiction, and preserve it[s] independence and integrity as a co-equal department of government."[11] In some cases we have recognized the trial court's inherent power to control how evidence is presented[12] and to assess conditions of bail[13] or probation.[14]

---

3. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991).

4. *Id.* at 44–45, 111 S.Ct. 2123.

5. *Id.* at 40, 111 S.Ct. 2123.

6. *Id.* at 46, 111 S.Ct. 2123.

7. *Id.* at 47, 111 S.Ct. 2123.

8. *Id.* at 50, 111 S.Ct. 2123 (emphasis added).

9. *Matchett v. State*, 941 S.W.2d 922, 932–933 (Tex.Crim.App.1996), *cert. denied*, 521 U.S.

1107, 117 S.Ct. 2487, 138 L.Ed.2d 994 (1997).

10. *Id.* at 932 n. 11.

11. *Id.*

12. *Marx v. State*, 987 S.W.2d 577, 582–583 (Tex.Crim.App.1999), *cert. denied*, 528 U.S. 1034, 120 S.Ct. 574, 145 L.Ed.2d 436 (1999).

13. *Dallas v. State*, 983 S.W.2d 276, 277 (Tex. Crim.App.1998).

14. *Fielder v. State*, 811 S.W.2d 131, 134 (Tex. Crim.App.1991).

In these cases, we also recognized that legislatively enacted procedures did not preclude other procedures adopted by the trial court pursuant to its inherent power. We found that a statutory method for providing closed-circuit televised testimony did not preclude the use of closed-circuit television for witnesses who did not qualify under the statute, that a statute authorizing a trial court to set conditions of bail in a felony case did not defeat a trial court's inherent power to set conditions of bail in a misdemeanor case, and that the Legislature's creation of a Community Rehabilitation Center, with strict guidelines, did not prevent a trial court from creating a "Court Residential Treatment Center" that did not adhere to those guidelines.[15]

And our courts have long recognized that the power of contempt is inherent in the judicial department.[16] This Court has described the power as "broad and plenary" in the judiciary.[17] Another court has stated, "[a]lthough the exercise of this authority should be tempered with common sense and sound discretion, nevertheless we accord the judge's contempt power wide latitude because it is essential to judicial independence and authority." [18]

At first glance, another line of Texas cases may seem at odds with the assertion of inherent power with regard to contempt proceedings, at least insofar as subpoenas are involved. While, the Legislature has codified the ability to punish contempt generally in Section 21.002 and has provided specific penalties,[19] it has also enacted Chapter 24 of the Code of Criminal Procedure to deal specifically with the matter of subpoenas. Even more specifically, Article 24.05 provides that "[i]f a witness refuses to obey a subpoena, he may be fined at the discretion of the court, as follows: in a felony case, not exceeding five hundred dollars; in a misdemeanor case, not exceeding one hundred dollars." [20]

Some of our earlier cases, although not squarely addressing the issue in the instant matter, are consistent with the view that Article 24.05 and Section 21.002 are irreconcilable. In *Ex Parte Wilkinson,* the trial court held a witness in contempt for failing to testify before a grand jury in violation of Article 20.15 of the Code of Criminal Procedure, which provides penalties, including jail, for refusing to testify after being compelled to appear before a grand jury.[21] There we held that the more specific statute, Article 20.15, prevailed over the more general contempt statute, Article 1911a of the Civil Statutes (now Section 21.002 of the Government Code).[22]

---

**15.** *See Marx, Dallas,* and *Fielder,* respectively.

**16.** *See, e.g., Ex Parte Robinson,* 19 Wall. 505, 86 U.S. 505, 510, 22 L.Ed. 205 (1873); *Ex Parte Pryor,* 800 S.W.2d 511 (Tex.1990); *Ex Parte Browne,* 543 S.W.2d 82 (Tex.1976); *Ex Parte Davis,* 171 Tex.Crim. 629, 353 S.W.2d 29 (App.1961); *Ex Parte West,* 60 Tex.Crim. 485, 132 S.W. 339 (App.1910).

**17.** *Ex Parte Taylor,* 807 S.W.2d 746, 748 (Tex. Crim.App.1991).

**18.** *In re Bell,* 894 S.W.2d 119, 127 (Tex. Spec.Ct.Rev.1995).

**19.** *See* Tex. Gov't Code § 21.002.

**20.** Tex.Code Crim. Proc. Art. 24.05.

**21.** 641 S.W.2d 927, 932–33 (Tex.Crim.App. 1982).

**22.** *Id.* We said in *Wilkinson* that the two competing statutes were not *in pari materia* because they were "contained in different legislative acts, provide for different penalties, and [were] designed to serve different purposes and objectives." *Id.* at 932. For an explanation of the *in pari materia* rule, see *Alejos v. State,* 555 S.W.2d 444, 449–50 (Tex.Crim.App.1977)(explaining that "statutes that deal with the same general subject, have the same general purpose, or relate to the same person or thing or class of persons or things are considered as being *in pari materia* though they contain no reference to one another"). *See also Cheney v. State,* 755 S.W.2d

In *Ex Parte Marek*,[23] a witness appeared before a grand jury to testify but failed to bring with him certain documents as required in a subpoena duces tecum that he received. We concluded that the trial court erroneously held the witness in contempt under Article 20.15 because the witness actually appeared and testified before the grand jury.[24] We explained that Chapter 24, not Chapter 20, of the Code of Criminal Procedure treats subpoena matters and provides various fines for failure to comply.[25] Nothing in the Code of Criminal Procedure, however, permitted confinement in jail until subpoenaed material is brought before a grand jury. We noted, moreover, that the trial court erroneously found a "direct contempt" of the court where the court itself had issued an order directing the witness to produce the documents.[26] The command, we said, was "to bring materials to the grand jury, not to the court," and thus the court's general contempt power under Article 1911a was not implicated.

However, the holdings in these cases have been undercut by our subsequent holding in *Ex Parte Edone*.[27] In that case, we overruled an earlier decision holding that violation of a court order to answer grand jury questions was a contempt of the grand jury and not of the court itself.[28]

It logically follows that violating a court order to produce documents in a grand jury would likewise constitute contempt of court, and not merely of the grand jury, contrary to *Marek's* holding. In supporting its position, *Edone* characterized the grand jury as "an appendage of the court, powerless to perform its investigative function without the court's aid, *because powerless itself to compel the testimony of witnesses. It is the court's process which summons the witness to attend and give testimony,* and it is the court which must compel a witness to testify if, after appearing, he refuses to do so."[29] With this language, *Edone* characterized the subpoena power as a power of the *court* and not merely a ministerial function performed by the clerk.

*Edone* also indicated that a district court's punishment options for contempt were limited because the court's power to supervise the grand jury was specifically conferred by statute, and Article 20.15 was the method the Legislature conferred upon the trial court in exercising its supervision.[30] This conclusion seems flawed because, under the Texas constitution, grand juries are a part of the judicial system,[31] and therefore the courts have inherent power to supervise them.

123, 126–27 (Tex.Crim.App.1987) (holding that the "felony theft" statute and the "false statement to obtain property or credit" statute were not *in pari materia* where the "latter statute was more specific and thus controlling, and where the statutes dealt with different subject matter."). Under *Cheney's* analysis, if Article 24.05 and § 21.002 are *in pari materia*, then Article 24.05 prevails as the more specific statute. *Id.* at 126. Even if the two are not *in pari materia*, then Article 24.05 still prevails because its plain wording applies more directly to the instant matter, *id.* at 127, and, under *Wilkinson*, it prevails as a special statute. *Wilkinson*, 641 S.W.2d at 932.

**23.** 653 S.W.2d 35 (Tex.Crim.App.1983).

**24.** *Id.* at 37.

**25.** *Id.*

**26.** *Id.* at 37 n. 5.

**27.** 740 S.W.2d 446 (Tex.Crim.App.1987).

**28.** 740 S.W.2d at 449 (overruling *Ex Parte Port*, 674 S.W.2d 772 (Tex.Crim.App.1984)).

**29.** *Id.* at 448 (emphasis added).

**30.** *Id.* at 448.

**31.** TEX. CONST., Art. V, §§ 13 & 17.

Regardless of the status of grand juries, trial courts must have the inherent power to subpoena witnesses for trial, as the power to subpoena witnesses is necessary for the trial court to exercise its constitutional duties. And that subpoena power, to be effective, must not require a subsequent court order for its enforcement. As the Supreme Court so eloquently stated:

> A subpoena has never been treated as an invitation to a game of hare and hounds, in which the witness must testify only if cornered at the end of the chase. If that were the case, then, indeed, the great power of testimonial compulsion, so necessary to the effective functioning of courts and legislatures, would be a nullity.[32]

And the Supreme Court has also recognized the contempt power to be so important an aspect of the judicial system that it requires federal courts to abstain from decisions that would interfere with state contempt proceedings.[33]

Given a trial court's inherent powers to subpoena witnesses and punish contempt of its own proceedings, and the importance of those powers to the functioning of the judiciary, we should follow the Supreme Court's admonition to not lightly hold that the Legislature has abrogated such power through its statutory enactments. Here, the Legislature has simply assessed a penalty for failing to comply with a subpoena of any kind. Chapter 24 authorizes subpoenas in numerous situations, which are not necessarily confined to court proceedings.[34] The penalty provided by the Legislature for failing to obey subpoenas generally should not be held to displace the trial court's inherent power to punish by contempt the failure to obey a court subpoena.

One final reason for declining to interpret the Legislative scheme as displacing the trial court's inherent power is the possibility that such a scheme would violate the Separation of Powers provision of the Texas Constitution. This Court has a duty to narrowly construe statutes to avoid a constitutional violation.[35] The Separation of Powers issue is addressed in detail in part II of this opinion.

## II.

The venerable principle of separate and distinct powers has a distinguished history in American public law.[36] Long have we recognized that, as Madison observed, the "accumulation of all powers, legislative, ex-

---

**32.** *United States v. Bryan,* 339 U.S. 323, 331, 70 S.Ct. 724, 94 L.Ed. 884 (1950).

**33.** *Juidice,* 430 U.S. at 334–337, 97 S.Ct. 1211 (applying *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) abstention doctrine to state contempt proceedings).

**34.** The statute authorizes the issuance of a subpoena for proceedings before a court in a criminal action, before an examining court, at a coroner's inquest, before a grand jury, at a habeas corpus hearing, and in any other proceeding in which the person's testimony might be required in accordance with the Code of Criminal Procedure. TEX. CODE CRIM. PROC., Art. 24.01(a).

**35.** *Long v. State,* 931 S.W.2d 285, 295 (Tex. Crim.App.1996).

**36.** *See, e.g., Marbury v. Madison,* 5 U.S. (1 Cranch) 137, 177, 2 L.Ed. 60 (1803) (explaining that "it is emphatically the province of the judicial department to say what the law is" but cautioning courts to avoid involvement in matters properly left to the political branches); THE FEDERALIST No. 47, at 301 (James Madison) (Clinton Rossiter, ed., 1961) (explaining the division of powers in the federal Constitution, noting that the distinct departments will have a constitutional control over one another); Paul Verkuil, *The American Constitutional Tradition of Shared and Separated Powers: Separation of Powers, the Rule of Law, and the Idea of Independence,* 30 WM. & MARY L.REV. 301 (1989) (providing an historical account of the idea of the separation of powers).

ecutive, and judiciary in the same hands, whether of one, a few, or many, and whether hereditary, self-appointed, or elective, may justly be pronounced the very definition of tyranny." [37] To prohibit the ambitious encroachments of one branch upon another, the Texas Constitution, like the federal Constitution, divides power into three separate branches. Unlike the federal Constitution, Article II of the Texas Constitution further provides that each of the departments

> shall be confided to a separate body of magistracy, to wit: Those which are Legislative to one; those which are Executive to another, and those which are Judicial to another; *and no person, or collection of persons, being of one of these departments, shall exercise any power properly attached to either of the others, except in the instances herein expressly permitted.* [38]

For our purposes here, it is also notable that the state Constitution says specifically that, "[t]he Legislative power of this State shall be vested in a Senate and House of Representatives, which together shall be styled, 'The Legislature of the State of Texas' " [39] and that, "[t]he judicial power of this State shall be vested in one Supreme Court, in one Court of Criminal Appeals, in Courts of Appeals, in District Courts, in County Courts, in Commissioners Courts, in Courts of Justices of the Peace, and in such other courts as may be provided by law." [40] In elaborating upon the constitutional text, this Court has stated that Article II may be violated in either of two ways: "it is violated when one branch of government assumes, or is delegated, *to whatever degree*, a power that is more 'properly attached' to another branch," or it "is also violated when one branch unduly interferes with another branch so that the other branch cannot effectively exercise its constitutionally assigned powers." [41]

As I discussed earlier, our courts have long recognized that the powers to issue subpoenas and punish contempt are inherent in the judicial department. Furthermore, we have described contemptuous acts themselves broadly, explaining that contempt is conduct that obstructs or tends to obstruct the proper administration of justice. [42] The act itself must amount to contemptuous conduct, regardless of the purpose or intent of the actor. [43]

"The judicial power" does not (and cannot, in light of Article II) mean some of

---

37. *See* THE FEDERALIST No. 47, at 301 (James Madison).

38. TEX. CONST. Art. II, § 1 (emphasis added).

39. *Id.* Art. III, § 1.

40. *Id.* Art. V, § 1.

41. *Armadillo Bail Bonds v. State*, 802 S.W.2d 237, 239 (Tex.Crim.App.1990) (emphasis added). *See also State v. Williams*, 938 S.W.2d 456, 458 (Tex.Crim.App.1997) (recognizing same); *State v. Condran*, 977 S.W.2d 144, 145 (Tex.Crim.App.1998)(Keller, J., dissenting)(recognizing same). I agree with the first prong of our separation of powers jurisprudence, that one branch may not assume or be delegated to *any degree* a power that belongs to another branch. It is not, however, clear to me that the second, functionalist prong of our existing jurisprudence—the "undue interference" prong—is entirely accurate, although, consistent with the principle of *stare decisis*, I have applied it in past opinions where the difference in the two prongs was neither raised nor of significance to the analysis. Perhaps in a future case we as a Court will have the opportunity to consider whether Article II of the Texas Constitution prohibits *any* interference with another branch's power, due or undue.

42. *Ex Parte Gibson*, 811 S.W.2d 594, 596 (Tex.Crim.App.1991); *Taylor*, 807 S.W.2d at 748; *Lee v. State*, 799 S.W.2d 750, 752 (Tex. Crim.App.1990).

43. *Taylor*, 807 S.W.2d at 748–49.

the judicial power. Rather, it means all of the judicial power, unless the Constitution itself gives a specific judicial power to another branch of the government.[44] Because the contempt power inheres in the judicial department, the Legislature may not assume that power by statute unless the Constitution expressly permits it to do so. The Constitution, however, does no such thing. True, the Constitution enables either chamber of the Legislature to imprison those who commit disrespectful or disorderly conduct in the presence of the chamber, or who obstruct legislative proceedings.[45] But we have held that, while the Legislature may punish such contemptuous or disruptive conduct, this power is limited to those circumstances in light of Article II and the judicial nature of the contempt power.[46] The Legislature also has general authority to define and punish crimes and other acts contrary to good civil order where a wrong requires a legal remedy.[47] As the cases demonstrate, however, contempt is a singular offense in the law (note that it does not appear in the Penal Code, where one would expect to find a legislatively defined criminal offense), and its execution and punishment are unique to the judiciary.[48]

The Constitution also permits the Legislature to prescribe the jurisdiction of the courts it creates[49] and to delegate rule-making authority to this Court or the Supreme Court, subject to limitations for which the Legislature may provide by law.[50] That authority, however, cannot displace the substantive powers of the judiciary. As we have said, giving the Legislature authority to infringe upon the substantive power of the judicial department by establishing procedural guidelines for judicial administration would "render[] the separation of powers doctrine meaningless."[51]

If Article 24.05 does in fact limit a trial court's ability to punish disobedience to subpoenas under its inherent authority to punish contempt, then the statute is constitutionally infirm because it fails both elements of our separation of powers jurisprudence: it amounts to the legislative exercise of a power reserved exclusively to the courts (the power to identify contemptuous conduct and to punish it in the court's discretion consistent with the Constitution, common sense and good judgment), and it unduly interferes with the court's ability to effectuate the judicial power, of which contempt is a necessary

---

44. The Texas Constitution, does, in fact, vest certain judicial powers in the Legislature. For example, the House and Senate may punish by imprisonment those who behave in a disrespectful or disorderly manner in the chamber's presence or who disrupt legislative proceedings. *See* TEX. CONST. Art. III, § 15. The Senate also has the power to try impeachments. *See id.* Art. XV, § 2.

45. *Id.* Art. III, § 15.

46. *See Ex Parte Youngblood*, 94 Tex.Crim. 330, 251 S.W. 509, 511–12 (App.1923).

47. TEX. CONST. Art. III.

48. *See Taylor*, 807 S.W.2d at 748 (noting that the contempt power is plenary in the judiciary).

49. TEX. CONST. Art. V, § 1.

50. *Id.* Art. V, § 31(c).

51. *Meshell v. State*, 739 S.W.2d 246, 255 (Tex. Crim.App.1987). *Meshell* and several prior cases involved controversies over the meaning of former Article V, § 25 of the Texas Constitution, which gave the Supreme Court procedural rulemaking authority "not inconsistent with the laws of the State." *Id.* Our courts consistently found the Legislature's use of that provision to violate the separation of powers. *See, e.g., id.; Williams v. State*, 707 S.W.2d 40 (Tex.Crim.App.1986); *Langever v. Miller*, 124 Tex. 80, 76 S.W.2d 1025 (1934). Although Article V, § 25 was repealed, Article V, § 31 contains similar language.

element. In some situations, the failure to comply with a subpoena may be so egregious, or so infect the truth-seeking process, that confinement is both appropriate and necessary. So interpreted, Article 24.05 strips the court of the authority to determine the appropriate and necessary punishment for failure to comply with a subpoena, leaving that determination in the hands of the Texas Senate and House of Representatives, though the Constitution commits no such power to those chambers.

Were Article 24.05 merely a codification of the notion—which seems fairly implicit in our cases—that failure to comply with a subpoena is a contemptuous act [52] punishable by the court's inherent powers of contempt, it would pose no constitutional difficulty. Indeed, failure to comply with a subpoena is contemptuous precisely because it "obstructs the proper administration of justice" [53] by compromising substantially the truth-seeking process. But affirmatively imposing a statutory limitation on the court's inherent power to punish a contemptuous act by providing only for a fine deprives the court of exclusive control over an inherent judicial function.

This is not to say that the judiciary possesses, or should possess, unlimited authority to exercise its contempt powers. The federal and state Constitutions provide ample security for the contemnor, who has the protection of the Due Process and Due Course of Law clauses,[54] the Equal Protection Clause and the Texas Equal Rights Amendment,[55] the double jeopardy clauses,[56] and the constitutional prohibitions on excessive fines and cruel and unusual punishments.[57] These are the protections that the common law and our constitutional law have traditionally afforded the people against irrational or unwarranted state conduct in the administration of justice. The Legislature, however, may not supplement those constitutional limitations on judicial authority with statutory ones, as well, absent a specific constitutional grant of power to do so.

Madison shrewdly observed that, although "in republican government, the legislative authority necessarily predominates," [58] it remains necessary to provide mechanisms for checking legislative power and thus preventing its encroachment upon other, coequal departments in order to protect against "the legislative department everywhere extending the sphere of its activity and drawing all power into its impetuous vortex." [59] Article II of the Texas Constitution provides this Madisonian antidote by explicitly prohibiting the Legislature from intruding upon judicial ground, absent the support of constitutional text.[60] I respectfully dissent.

**52.** *See, e.g., Marek,* 653 S.W.2d at 38 (describing failure to comply with a subpoena duces tecum as "contemptuous").

**53.** *See Taylor,* 807 S.W.2d at 748.

**54.** *See* U.S. CONST. amend. XIV; TEX. CONST. Art. I, § 19.

**55.** *See* U.S. CONST. amend. XIV; TEX. CONST. Art. I, § 3a.

**56.** See U.S. CONST. amends. V, XIV; TEX. CONST. Art. I, § 14.

**57.** *See* U.S. CONST. amend. VIII; TEX. CONST. Art. I, § 13.

**58.** THE FEDERALIST No. 51, at 322 (James Madison).

**59.** THE FEDERALIST No. 48, at 309 (James Madison).

**60.** TEX. CONST. Art. II, § 1.