**REVERSED and REMANDED and Opinion Filed October 20, 2021**



In The
# Court of Appeals
## Fifth District of Texas at Dallas

### No. 05-19-01402-CR

**MICHAEL WAYNE RILEY, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 194th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F-1770289-M**

## MEMORANDUM OPINION
Before Justices Schenck, Smith, and Garcia
Opinion by Justice Smith

A jury convicted appellant, Michael Wayne Riley, of the offense of criminal mischief in the amount of $2,500 or more but less than $30,000. The State alleged that he committed criminal mischief by intentionally and knowingly damaging or destroying complainant's motor vehicle by striking complainant's motor vehicle with his motor vehicle. The trial court sentenced appellant to eighteen months' confinement.

On appeal, appellant contends that the trial court erred by admitting a video from approximately two years prior to the offense in which appellant called

complainant the "n" word. Because we conclude that the admission of the video was not error under the facts of this case, we affirm appellant's conviction for criminal mischief. As to the punishment phase, the parties agree that the trial court committed reversible error by failing to consider community supervision because trial counsel and the court mistakenly believed that appellant was ineligible for community supervision. We agree with the parties that appellant was eligible for community supervision. Thus, we remand the case to the trial court for a new punishment hearing consistent with this opinion.

## Background

Appellant and complainant had been next door neighbors since February 2012, and did not get along. Their issues began in 2013 and continued to 2017. In August 2013, complainant was sweeping grass clippings back onto appellant's sidewalk after he believed appellant had put them on his driveway and sidewalk. Appellant threatened him from the window, and complainant heard appellant chamber a round in a gun. Complainant pulled his gun from his holster and called the police. In March 2015, appellant tried to run complainant's wife off the road and screamed obscenities at her. There were also several occasions in which appellant followed complainant as he drove from his neighborhood to work.

On January 31, 2017, complainant was on his way to work and noticed appellant several times while they were passing each other in traffic. Complainant testified that he shook his head at appellant, but no words were exchanged before

appellant drove his truck into the driver's side door of complainant's vehicle. When appellant hit complainant's vehicle with his front right bumper, it pushed complainant's vehicle out of the lane and into the right lane where it hit the curb and came to a stop. Appellant's truck also came to a stop.

Appellant then backed up, and complainant pulled forward believing that appellant was going to hit him again. Appellant drove away, jumped the median and, in the process, hit two other vehicles. One of the other drivers testified that he was sitting at a red light when he heard a loud crash behind him. Appellant sideswiped the left front side of his car, hit the car in front of him, and squeezed in between his car and the other car to get on the service road. Both complainant and the other driver called 9-1-1 and followed appellant to a parking lot. The 9-1-1 operator told complainant to stop following appellant, so he complied; appellant drove away.

Both complainant and the other driver filed reports with the police. Complainant's vehicle sustained $8,512.62 in damages. The State indicted appellant for criminal mischief, and a jury convicted him. This appeal followed.

**Admission of the Video**

In his first issue, appellant argues that the trial court erred when it admitted a video that depicted him calling complainant the "n" word. He asserts that his cross-examination of complainant about the August 2013 incident did not open the door to "a further irrelevant and highly prejudicial incident" and that the probative value

of the video is grossly outweighed by its prejudicial impact because it occurred at least two years prior to the offense. Appellant contends that the error was harmful because it inserted a highly offensive word into the case and, although it was possible the jury could convict him based on the underlying facts, "it was hardly an overwhelming case."

We review a trial court's decision to admit or exclude evidence under an abuse of discretion standard. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh'g). We will reverse a trial court's ruling only if it is outside the "zone of reasonable disagreement." *Id.* Evidence is relevant when it has any tendency to make a fact of consequence in determining the action more or less probable than it would be without the evidence. TEX. R. EVID. 401. Rule 404(b)(2) provides that extraneous evidence may be admissible for other purposes, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." TEX. R. EVID. 404(b)(2). Extraneous evidence may also be admissible to rebut a defensive theory. *De La Paz v. State*, 279 S.W.3d 336, 344–47 (Tex. Crim. App. 2009).

Appellant concedes that the State is entitled to present rebuttal evidence that tends to refute a defensive theory even if such evidence encompasses an extraneous offense. That is precisely what happened here.

Appellant's defense at trial was complainant was the aggressor, complainant was threatening and chasing appellant, and complainant hit appellant in the collision.

–4–

On cross-examination of complainant, defense counsel elicited testimony and introduced photographs that showed an incident on August 29, 2013, in which complainant was sweeping grass clippings back onto appellant's sidewalk and holding a .9-millimeter pistol. The pictures depicted complainant with a broom in one hand and the .9-millimeter pistol in the other. When defense counsel began to elicit this testimony, the State cautioned that it believed defense counsel's questions were opening the door "to a whole lot of everything." Defense counsel explained that he was presenting the evidence because it "goes to the motive of the witness sometime before this [offense] occurred." The trial court instructed the State that it would still need to approach if it wanted to introduce extraneous evidence and allowed the defense to continue with its cross-examination of complainant.

Complainant explained that he came home for lunch and noticed grass clippings on his driveway and sidewalk, so he swept them back onto appellant's sidewalk. He further explained that his gun was holstered on his hip because he had a concealed handgun license. Complainant testified that appellant took the pictures of complainant from his front window and said, "I see you. I see you, you stupid ['n' word]." Appellant elicited this testimony from complainant and made no objection or attempt to stop the line of questioning. Complainant further testified that appellant laughed when he told him he was going to continue to sweep the clippings back. Appellant told complainant, "I will put a F'ing hole in your head, you stupid ['n' word]." Complainant heard what he thought was a rifle or a round

being chambered in a gun, so he dropped the broom, got behind the mailbox, and pulled his gun. He said he never pointed it toward appellant. Complainant claimed that the pictures depicting him holding the gun were taken when the police were on their way, not before the two exchanged words. The police arrived, and complainant gave a statement. Appellant would not come to the door, so the police told complainant to file a report, which he did.

After defense counsel's cross-examination of complainant, the State argued that appellant opened the door to what occurred on August 29, 2013, but also to allegations that appellant followed complainant to and from work on other occasions, that appellant chased people off the road, and that appellant made racist comments toward complainant, including on the video. The State also argued that the extraneous evidence was admissible to show motive, intent, and lack of mistake as to the instant offense.

The only piece of evidence at issue in this appeal is the video, which shows an argument between appellant and complainant after the August 29, 2013 incident. The parties reference the 2013 incident in the video; however, the parties did not agree as to when the argument on the video occurred. Complainant believed that it took place a few months after the August 2013 incident; possibly November or December 2013. Appellant's wife testified (after the video had already been admitted) that the argument took place on February 26, 2015.

Appellant objected at trial that his cross-examination of complainant regarding the August 2013 incident did not open the door to the admission of the video: "I don't think that – being that far removed, it would have any automatic opening the door to that." The trial court ruled that the defense opened the door and admitted the evidence.

On appeal, appellant couches his argument as a violation of rule 403: the video's probative value is grossly outweighed by its prejudicial impact because the argument shown in the video occurred two years prior to the collision. However, at trial, appellant neither argued that the video, or using the "n" word in front of the jury, was inflammatory or highly prejudicial nor specifically raised a rule 403 objection to the extraneous evidence. Assuming, without deciding, that appellant's remoteness objection at trial was sufficient to inform the trial court that he was raising a rule 403 objection, we hold that the trial court did not abuse its discretion in admitting the video over appellant's remoteness objection.

Rule 403 provides that the trial court may exclude relevant evidence if its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence. TEX. R. EVID. 403. We evaluate the following four factors when conducting a rule 403 analysis: (1) the probative value of the evidence; (2) the potential to impress the jury in some irrational, yet indelible way; (3) the time needed to develop the evidence; and (4) the proponent's need for the evidence. *State v.*

*Mechler*, 153 S.W3d 435, 440 (Tex. Crim. App. 2005). This balancing test "is always slanted toward admission, not exclusion, of otherwise relevant evidence." *De La Paz*, 279 S.W.3d at 343.

Here, the video depicted an argument between the parties that referenced the August 29, 2013 incident, an incident that appellant put into evidence to show that complainant was the aggressor on January 31, 2017, the day of the offense. Although the video was taken approximately two years before the offense, possibly over three years before, appellant's cross-examination had already elicited testimony about an event that occurred three and one-half years before the offense. Thus, at the time the trial court ruled that the video was admissible, the jury had before it evidence of appellant's and complainant's bad relationship stretching from August 29, 2013, to January 31, 2017. The video referenced the August 2013 incident and was an example of the general nature of the parties' relationship during that time frame.

Furthermore, the video was probative of appellant's motive and intent on the day of the offense because it demonstrated appellant's animosity toward complainant. It also rebutted appellant's defensive theory that complainant was the aggressive neighbor and that it was him that caused the collision in 2017, not appellant. Thus, the probative value of the video weighs in favor of admission.

As to the second factor, we cannot say that the video itself had the potential to impress the jury in some irrational but indelible way. While we agree that the "n"

word is highly inflammatory and could tempt the jury to find appellant guilty based on the emotions that such a word evokes, defense counsel had already elicited testimony from complainant regarding appellant calling him the "n" word during the August 2013 incident. It is also somewhat difficult to hear each of the times appellant calls complainant the "n" word in the video. After playing the video, the prosecutor asked complainant what appellant called him, and appellant does not challenge that testimony on appeal, or any other testimony in which complainant outlined the other times in which appellant called him the "n" word.[1] What can clearly be heard in the video is the two arguing about who previously pulled a gun on who, and complainant stating that anytime appellant threatens him he is going to bring his gun. Thus, a review of the video itself does not necessarily weigh against admission.

The time to present the evidence to the jury was minimal and, therefore, the third factor weighs in favor of admission. The video was played in two parts; the first was seven seconds long and the second was twenty-five seconds long. The State's examination of complainant concerning the video argument spanned a mere three pages of the record.

---

[1] We also note that appellant did not offer a redacted version of the video without audio of appellant saying the "n" word. He simply argued that the entire video should be excluded because it was too remote, and the State had not opened the door to its admission.

The State's need for the evidence in this case was high because appellant presented complainant as an aggressive neighbor who pulled a gun on him in 2013 and who was the cause of the 2017 collision. To rebut that evidence, the State needed to show how appellant actually treated complainant throughout the years leading up to the offense. The short video depicted one such situation in which appellant was angry and aggressive toward complainant. Thus, the final factor weighs in favor of admission.

Because our review of the rule 403 balancing test weighs toward admissibility and because the evidence was relevant to rebut a defensive theory and to show motive and intent, we cannot say that the trial court abused its discretion in admitting the video over appellant's remoteness objection. We overrule appellant's first issue.

## Trial Court's Failure to Consider Full Range of Punishment

In his second issue, appellant contends that the trial court committed reversible error when it failed to consider the full range of punishment applicable to his conviction. Specifically, appellant asserts that the trial court failed to consider community supervision. The State agrees that this was reversible error.

Prior to trial, the trial court admonished appellant that, if the jury returned a verdict of guilty, he was not eligible for community supervision. Neither the State, nor defense counsel corrected the trial court or raised an objection. When defense counsel asked the trial court during the punishment phase whether it would like to have a presentence investigation report prepared, the State commented that appellant

was not "probation eligible." Defense counsel stated in its closing argument that he knew the court could not consider probation. Thus, it appears from the record that the parties and the trial court believed that appellant was not eligible for community supervision and, therefore, the trial court did not consider community supervision when it assessed appellant's punishment at eighteen months' confinement.

The Court of Criminal Appeals has determined that a defendant cannot waive, by inaction, the right to be sentenced by a judge who properly considers the full range of punishment applicable to the conviction; there must be an effective express waiver by the defendant in order for an appellate court to hold that the error has not been preserved for appellate review. *Grado v. State*, 445 S.W.3d 736, 739, 741 (Tex. Crim. App. 2014) (categorizing such right as a category two *Marin* right) (citing *Marin v. State*, 851 S.W.2d 275, 278–80 (Tex. Crim. App. 1993), *overruled on other grounds by Cain v. State*, 947 S.W.2d 262 (Tex. Crim. App. 1997)). Here, appellant did not expressly waive his right to be sentenced under the full range of punishment.

Article 42A.054 sets out the limitations on judge-ordered community supervision and includes a laundry list of offenses for which article 42A.053 does not apply. TEX. CODE CRIM. PROC. ANN. art. 42A.054. Criminal mischief is not included, nor is there a general limitation on judge-ordered community supervision for state jail felonies. *Id.* Article 42A.053 allows a judge to suspend the imposition of a sentence and place a defendant on community supervision after conviction. TEX. CODE CRIM. PROC. ANN. art. 42A.053(a)(1). However, article 42A.053 also

–11–

provides that a defendant is not eligible for community supervision if the defendant is sentenced to serve "a term of confinement under Section 12.35." TEX. CODE CRIM. PROC. ANN. art. 42A.053(c)(2). Section 12.35 governs punishment ranges for state jail felonies. TEX. PENAL CODE ANN. § 12.35.

In contradiction to article 42A.053(c)(2), the legislature enacted article 42A.551(d), which provides, "On conviction of a state jail felony punished under Section 12.35(a), Penal Code, . . . the judge may: (1) suspend the imposition of the sentence and place the defendant on community supervision; or (2) order the sentence to be executed." TEX. CODE CRIM. PROC. ANN. art. 42A.551(d).

We agree with appellant that the more specific provision regarding community supervision for state jail felonies should apply. *See In re Dotson*, 76 S.W.3d 393, 395 (Tex. Crim. App. 2002) ("One of our general rules of statutory construction is that a more specific statute or rule will prevail over a more general one."); *Ramirez v. State*, No. 08-02-00410-CR, 2003 WL 22461821, at *2–3 (Tex. App.—El Paso Oct. 30, 2003, no pet.) (mem. op., not designated for publication) (comparing former provisions in article 42.12 and holding defendant was eligible for community supervision because more specific language of 42.12, § 15(a), now codified as 42A.551, controls over general language of 42.12, § 3(e)(2), now 42A.053); *Embree v. State*, No. 05-01-01052-CR, 2003 WL 1492950, at *7 (Tex. App.—Dallas Mar. 25, 2003, pet. ref'd) (not designated for publication) (comparing former provisions in article 42.12 and explaining trial court could give community

–12–

supervision when defendant was punished under article 12.35(a) for a state jail felony but not under 12.35(c) for an enhanced state jail felony).[2] Articles 42A.053 and 42A.054 can be found in Subchapter B, "Placement on Community Supervision," which broadly sets out when a defendant may be placed on community supervision for all levels of offenses. Article 42A.551 is located in Subchapter L, "State Jail Felony Community Supervision," and specifically sets out the parameters for community supervision for state jail felonies. We hold that article 42A.551 applies and, therefore, the trial court erred when it failed to consider community supervision as part of the full range of punishment applicable to appellant.

The failure of a trial court to consider the full range of punishment violates due process. *Grado*, 445 S.W.3d at 739. Therefore, we must review the error for harm.[3] Under either the constitutional harm standard or the non-constitutional harm

---

[2] *But see Alford v. State*, No. 02-16-00407-CR, 2018 WL 1192459, at *1 (Tex. App.—Fort Worth Mar. 8, 2018, no pet.) (mem. op., not designated for publication) (citing article 42A.053(c)(2), but not comparing with article 42A.551, and holding defendant was not eligible for judge-ordered regular probation because she was pleading guilty to a state jail felony); *Allen v. State*, No. 05-94-01880-CR, 1996 WL 98720, at *4 (Tex. App.—Dallas Mar. 7, 1996, no pet.) (not designated for publication) (citing former article 42.12 generally, but not former article 42.12, §15 specifically, and setting out four circumstances in which a trial court must refuse to grant probation including when the defendant is sentenced for a state jail felony).

[3] Appellant presents his harm analysis under *Almanza v. State*, 686 S.W.2d 157 (Tex. Crim. App. 1985) (op. on reh'g) and argues that he suffered egregious harm. But this is not a case of unobjected-to jury charge error. The State does not set out a standard for reviewing harm in its brief but agrees that the proper remedy is to remand the case to the trial court for a new punishment hearing. The State cites to *Cabrera v. State*, 513 S.W.3d 35, 41 (Tex. App.—Houston [14th Dist.] 2016, pet ref'd), which does not conduct a harm analysis in remanding the case for a new punishment hearing. This Court has previously reviewed such an error under Rule 44.2(b). *See Brooks v. State*, No. 05-18-01401-CR, 2019 WL 6606367, at *3–4 (Tex. App.—Dallas Dec. 5, 2019, no pet.) (mem. op., not designated for publication).

standard, we cannot conclude that the error in this case was harmless. *See* TEX. R. APP. P. 44.2.

The parties agree that appellant was harmed and, although the trial court sentenced appellant to eighteen months, which is on the upper end of the punishment range, we cannot say beyond a reasonable doubt the trial court's failure to consider community supervision did not affect appellant's punishment. *See* TEX. R. APP. P. 44.2(a) (constitutional error requires a judgment to be reversed unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment). Even if we were to review the error under the non-constitutional harm standard, we hold that the trial court's error in failing to consider the full range of punishment affected his substantial rights. *See* TEX. R. APP. P. 44.2(b) (any other error that does not affect substantial rights must be disregarded). Thus, appellant was harmed by the trial court's failure to consider whether to suspend the sentence and place appellant on community supervision. Appellant's second issue is sustained.

## Conclusion

We reverse appellant's sentence of confinement for a term of eighteen months and remand this cause for a new punishment hearing consistent with this opinion. *See* TEX. CODE CRIM. PROC. ANN. art. 44.29(b).

In all other respects, we affirm the trial court's judgment.

          /Craig Smith/
          CRAIG SMITH
          JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)
101402F.U05



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

MICHAEL WAYNE RILEY,
Appellant

No. 05-19-01402-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 194th Judicial
District Court, Dallas County, Texas
Trial Court Cause No. F-1770289-M.
Opinion delivered by Justice Smith.
Justices Schenck and Garcia
participating.

Based on the Court's opinion of this date, the judgment of the trial court is **REVERSED** and the cause **REMANDED** for further proceedings pursuant to TEX. CODE CRIM. PROC. ANN. art. 44.29(b).

Judgment entered October 20, 2021